Lackland, Adm'r, v. N. Missouri R.R. Co.

34 259
f86a 578

H. C. LACKLAND, ADM'R, &c., Respondent, *v.* THE NORTH MISSOURI RAILROAD COMPANY, Appellant.

*Railroads—Highway.*—Lackland v. North Missouri Railroad, 31, Mo. 181, affirmed.

*Highways—Nuisance.*—A railroad having the right to use a public highway for the ordinary purposes of a railroad as a means of travel and transportation, is responsible to adjoining proprietors only for using it in an illegal manner.

*Appeal from Warren Circuit Court.*

This was an action to recover damages against the defendant for obstructing the street in front of the plaintiffs' lot in the town of St. Charles, by using the same for the purposes of a railroad, to the exclusion of the plaintiffs from the use of their right of way in the street, and in diminution of the value of their property.

The answer sets up in defence that the defendant was authorized by its charter, and by certain ordinances of the city of St. Charles, to construct its railroad along and over said Main street, had a lawful right of way over said street for all the purposes and uses of said railroad, and that in consideration of the grant of the right of way from said city, and under contract with the city authorities, the defendant had macadamized and improved certain streets of the city of St. Charles, lying in the neighborhood of the plaintiffs' property aforesaid, whereby said property was increased in value.

It denies that the defendant had exclusively occupied said street, or had obstructed the same so as to exclude the plaintiffs and the public from the use thereof; or that the said street had been rendered impassable for vehicles.

It appeared in evidence, that Main street, although the ground had been for a long time dedicated to public use, had never been graded and improved, nor the grades fixed and established prior to the location of the railroad, in that part of it which passes in front of the plaintiffs' lot, nor indeed below Lewis street, some two squares or more above

the property of the plaintiffs; that below Lewis street there was only an unimproved road or carriage track running over the natural surface of the ground within the area dedicated to public use for a street, by means of which the plaintiffs had had access to their lot; that when the railroad came to be built, and the defendant was about to execute the contract with the city for the improvement of the streets, the grades of the cross-streets from Lewis street above, down to Franklin street, below the plaintiffs' lot, were for the first time fixed and established by the city, whereby the grade of Main street was also established at the places of crossing of said cross-streets, and thus the general grade of Main street, in that part, was at the same time ascertained, in the continuation thereof below Lewis street, to which point only the street had been previously graded and improved to the level of the established grade; that in the construction of the railroad the track had been built upon the continuation of the grade of Main street, as thus established, down to Franklin street, as nearly as practicable, and within the differences of level (amounting to a few inches only) between the middle of blocks and the cross-streets required for suitable drainage of an improved street; that this grade of Main street, and of the railroad tracks and switches, was some two or three feet higher than the natural surface of the ground, and the old carriage track thereon, opposite to the plaintiffs' property, whereby the street became impassable for vehicles; that, in fact, the road leading out of the city by that way had been for a long time before rendered impassable for carriages by reason of deep gullies washed out in the road at Franklin street and other places further down, and for that reason the whole public travel in that direction turned off from Main street at Clark or Lewis street, and went up to Second street, and thence down Second street to the country below; that this Second street (and also Clark street) was one of the streets included in the contract of the defendant with the city for the improvement of certain streets, in consideration of the right of way along Main street in the part in ques-

tion, and that after the construction of the railroad as before this part of Main street was used only by the few inhabitants living on the street in that neighborhood.

There was also evidence tending to show that the side-track and switches were used in making up trains; that long trains of cars sometimes stood for several hours on the track opposite to the plaintiffs' property; that on some occasions cattle-cars had been cleaned out into the street, creating a nuisance, and that a cattle-way had been erected and used on one side of the street, and between the edge of the street and the track, obstructing the passage of vehicles along the natural surface of the ground on that side.

There was evidence tending to show that in consequence of this condition of the street, during the time mentioned in the petition, the plaintiffs had suffered damage in respect of their use of the saw-mill for milling purposes, and that they had sustained damage in respect of the value of their property.

There was also evidence tending to show that the value of the plaintiffs' lot had been on the whole greatly enhanced, more than doubled in value, by the building of the railroad and by the improvements made under said contract; and that even for the general purposes of a saw-mill, the plaintiffs' property had become more valuable, if properly employed, since the construction of the railroad, than it was before.

The city ordinances and contract were in evidence.

The plaintiffs asked the following instructions, which were given, and the defendant excepted:

1. If the jury believe from the evidence that the property of the plaintiffs mentioned in their petition was injured in value, or that the business and operations of their saw-mill was incommoded or obstructed to the damage of the plaintiffs, or that the ways and approaches to said lot and mill were cut off, destroyed or obstructed by reason of the acts of the defendant, in constructing the main track of the railroad in such manner as to prevent the use of the street, or in lay-

ing the side-track close to the plaintiffs' property, along the east side of Main street and below Franklin street, or in laying the switch track connecting the two tracks aforesaid; or in the laying of ties, beams and iron rails, in such manner as to prevent the use of the street; or in the erection of said cattle-way or switch frames, and other obstructions in said streets, such as ditches; or by running cars and locomotives back and forth in said street, for the purpose of making up trains of cars; or by leaving cars and trains of cars standing on said Main and Franklin streets, in front of plaintiffs' property; or by unloading cars or using said streets for the purpose of a depot yard in such manner as to prevent the public from using said street, or so as to cut off plaintiffs' access to their property, then the jury must find for plaintiffs such damages as the evidence shows the plaintiffs have sustained, not exceeding the amount claimed in their petition.

2. If the jury believe that the plaintiffs have sustained damages by reason of the acts of the defendant, as set forth in the foregoing instruction and shown in the evidence, then the act of the Legislature incorporating defendant, or the act of the City Council of St. Charles granting the mere right of way along Main street to the defendant, will, of itself, constitute no defence for the injury done by defendant.

3. In estimating the damages resulting to plaintiffs on account of the acts of the defendant, the jury ought to take into consideration all the natural and proximate consequences of the acts of defendant complained of and proved to the satisfaction of the jury, and include all damages to plaintiffs of which such acts were the efficient cause.

The following instructions were given for the defendant:

1. The plaintiffs are not entitled to recover damages for any obstructions placed in the street, if the injury arising therefrom is shared by the public at large in their use of the street as a highway, unless he has shown some special damage sustained by himself, apart from such general and public injury; and if such special damage consist in the diminution of the value of his adjacent lot, he is not entitled to

recover therefor, unless he has shown that the obstructions were such as to prevent the public from using the street, and to cut off the plaintiffs' access to their lot.

2. In order to constitute such a destruction of the street as will entitle plaintiffs to recover in accordance with the preceding instruction, it is not sufficient to show a mere temporary suspension of its availability while the said road was in progress of construction; and if it appear that upon the completion of the road, according to its original design, (whether before or since the commencement of suit) the street was not totally obstructed, and the public could use it as such, except when in the actual occupancy of defendant in its ordinary purposes as a means of travel and transportation, then plaintiffs cannot recover for any consequent diminution of the value of their lot.

3. The temporary occupancy of the street by defendant, in the ordinary course of its business as a public carrier, is not such an obstruction of the street or highway as will entitle the plaintiffs to damages for any alleged diminution in the value of their lot.

4. Even if the jury should believe that the plaintiffs are entitled to recover damages under the instructions given, yet if they also find that the defendant, in consideration of the grant of the right of way through the street by the city, did certain work in the improvement of adjacent streets, in filling, grading and paving them, and building a sewer, and that the work so done enhanced the value of the plaintiffs' property, then the defendant is entitled to have the full amount of such enhancement set off against the amount of plaintiffs' damages in reduction thereof.

5. The jury are instructed that the use of the street for the purposes of a railroad, in its ordinary use as a means of travel and transportation, is not a perversion of the highway from its original purposes, and was authorized by the defendant's charter and the ordinances of the city of St. Charles, given in evidence by defendant; and the plaintiffs are

not entitled to recover any damages for injury to their property occasioned by such uses, only of the street in question.

6. The jury are instructed that it belongs to the city corporation of St. Charles to establish the grades of streets in the city, and to open, grade and improve the streets of the city; and if the jury believe from the evidence, that the obstructions on Main street, opposite the plaintiffs' lot, or any part thereof, were the result and consequence of the grade of Main street not having been fixed and established by the city authorities, or of its not having been graded and improved by the city to the level of the grade which had been, or was afterwards established in that part, then the plaintiffs cannot recover damages from the defendant for such obstructions, or any injury to their property occasioned thereby.

7. If the jury find that, in accordance with the instructions given, the plaintiffs have sustained any damage in this case, and if they also find that they have derived special benefits from the location and construction of defendant's railroad, apart from those derived by the public at large and the owners of adjacent property, then the defendant is entitled to have such special benefits estimated to their full extent, in reduction of the amount of damages which the plaintiffs might otherwise claim; and if such estimate equals or exceeds the amount of damages sustained by the plaintiffs, the jury will find for the defendant.

8. In estimating the amount of the plaintiffs' damages, if any, the jury are not authorized to add any sum for attorney's fees, or other expenses incurred in the prosecution of this suit.

The jury found a verdict for the plaintiffs for $4,500 damages.

The defendant filed a motion for a new trial, which was overruled, and a bill of exceptions was filed and the case is brought up by appeal.

*N. Holmes* and *Orrick*, for appellant.

I. As a matter of law on the whole evidence, this is a case of *damnum absque injuria*.

The damage sustained by the plaintiffs cannot be imputed to any injury which, in legal contemplation, the defendant can be said to have done. It is plain that whatever damage there was is properly attributable to the fact, that the street had never been graded and improved by the city authorities up to a level with the established grade, and for that this defendant is not responsible. It is not a case of excessive damages merely; no damage could lawfully be given against this defendant on the case made. (Porter v. North Mo. R.R. Co., 33 Mo. 128; Sedg. on Dam., 31, 110, 111 & *n.*; Redf. on Railw., 173, 177.)

Damages occurring to owners of lots on streets by reason of the establishing or changing the grades of the streets in improving the same, or by reason that the streets are not improved to a level with the established grades, by the municipal authorities, are *damnum absque injuria*. (Gurno v. City of St. Louis, 12 Mo. 414; Taylor v. City of St. Louis, 14 Mo. 20; Radcliff v. Brooklyn, 4 Comst. 195; Hatch v. Vt. Cen. R.R. Co., 25 V. 49; Tate v. O. & M. R.R. Co., 7 Ind. R. 479-482; Commonwealth v. Erie R.R. Co., 27 Penn. 354-357.)

II. The three instructions given for the plaintiffs entirely ignore and override the doctrine of *damnum absque injuria*, and are in direct conflict with the decision of this court in Porter v. North Missouri Railroad Company, 33 Mo. 128.

III. The first instruction propounds a series of hypothetical facts put in the disjunctive alternative, and the jury are told that if they believe either one of those facts to be proved, they should find against the defendant for all the damage which the evidence might show the plaintiffs to have sustained, not exceeding the amount claimed in derogation of the principle of *damnum absque injuria*.

This first instruction is vague, ambiguous and uncertain, and calculated to mislead the jury.

IV. The second, in effect, declares that the whole series of facts propounded disjunctively in the first, have been proved by the evidence, and the jury are told that if they believe the plaintiffs have sustained damage by reason of any of them, then the authority given by the Legislature and the City of St. Charles to the defendant, to build their railroad on the street, constitutes no defence in derogation of the principle of *damnum absque injuria*, and the decision in Porter v. North Mo. R.R. Co.

V. The third instruction requires the jury to estimate all damages against the defendant which have been occasioned by its acts, and of which those acts were the "efficient" (that is, the natural or physical) "cause," in total derogation of the doctrine of *damnum absque injuria*, and the authority derived from the Legislature. (Sedg. on Dam., 110, 111, & *n*. 33 Mo. 128.)

VI. On the evidence before the jury, and under the fifth and sixth instructions given for defendant, the verdict should have been for the defendant; and it is to be presumed it would have been so given, but that the jury were misled by the erroneous instructions aforesaid.

VII. Even if some particular acts of the defendant were such as to render the company technically liable for damage, it is plain that the main bulk of the damages sustained by the plaintiffs was due to the unimproved condition of the street, and not to those particular acts of the defendant; and that the jury did not discriminate in this, but saddled the whole amount of the damages on the defendant.

*E. A. Lewis*, for appellant.

1. Did the obstructions complained of amount to "an entire conversion of the street," and virtually "block it up for all the purposes of a street?" This is the true test as established by the decisions of this court in the former cases, and

the questions must be affirmatively answered to entitle the plaintiffs to a recovery.

It may be admitted that the evidence tends to show such an entire "conversion of the street" at the time of the institution of the suit; but it also shows that this was temporary and necessarily incident to the progress of the work of construction, and must have been known by the plaintiffs to be such when they commenced their suit. It could not, therefore, affect the value of plaintiffs' property, any more than the temporary deposit of building materials in a street will affect the value of adjacent lots. If, however, plaintiffs had attempted to show that they lost an opportunity to sell their lot during and by reason of such temporary obstructions, there might be some plausibility in a claim for special damages on that account. The whole claim of plaintiffs for damages must rest then upon the personal inconveniences suffered by them in their business, or in their access to their property. The inconveniences or hindrances suffered by the public at large cannot be considered; because, 1. Such injuries can only reach the plaintiffs specially through their effect upon the value of the property; and 2d. No recovery can be had by an individual for injuries which are shared with him by the public at large. (Angell on Highways, § 285; Pain v. Partrich, Carth. R. 191, 193; Barr v. Stevens, 1 Bibb, 292, 293; Hubert v. Groves, 1 Esp. R. 148; Pierce v. Dart, 7 Cow. 609; Sergeant v. Ohio & Miss. R.R., 1 Handy, 52.)

The whole question of damages being thus narrowed down to the personal inconveniences sustained by the plaintiffs, it is contended that the instructions given on their behalf are not warranted by the case presented. Other and special objections appear on the face of the instructions.

1. The first instruction, with its many disjunctive alternatives, remotely placed, form a qualifying expression which may or may not be applicable to them all, is ambiguous, obscure, and calculated to mislead the jury upon the true legal issues involved. The jury are informed that the plaintiffs

are entitled to recover if their property was injured in value, or the business of their saw-mill was incommoded, &c., "to the damage of plaintiffs." The next alternative is " or that the ways and approaches to said lot and mill were cut off, destroyed or obstructed." No requirement of " damage to the plaintiffs" here appears. It is therefore left to the jury to find for the plaintiffs on account of general obstructions in the highway, without special damage to them. Again, the conditions of plaintiffs' recovery appear to be : If the injuries complained of resulted from defendant's acts " in constructing the main track of the railroad in such a manner as to prevent the use of the street." Then follow two alternatives which appear to be wholly independent of the qualifying expression, which concludes the one preceding, and reappears with the next following. Thus it is not expressed to be necessary, either that the laying of " the side-track close to plaintiffs' property along the east side of Main street, and below Franklin street," or that the laying of " the switch connecting the two tracks aforesaid" should have been so done as to " prevent the use of the street." For it is only " the laying of ties, beams and iron rails, in such a a manner as to prevent the use of the street," which next appears with that essential qualification as a condition of recovery. Again, it is submitted that all those alternatives which refer to the " running of cars and locomotives back and forth in said streets, for the purpose of making up trains of cars," and to the " leaving of cars and trains of cars standing in said Main and Franklin streets," &c., however construed, are in conflict with the principles of the decision in the case of Porter v. North Mo. R.R. Co., 33 Mo. 128, and are fatal to the instruction.

2. The second instruction undertakes to annul one branch of the defence, if it appear that " the plaintiffs have sustained damages by reason of the acts of the defendant as set forth in the foregoing instructions, and shown in the evidence." What is here intended as being " set forth in the foregoing instructions and shown in the evidence" ? Is it

"that the plaintiffs have sustained damages," or is it "the acts of the defendant"? If the former, the instruction is fatally contrary to law; for it amounts to a judicial comment on the evidence, informing the jury that it "is shown in evidence" that "the plaintiffs have sustained damages." If the latter be meant, then the instruction is equally erroneous, for it assumes "that the acts of the defendant" are "set forth in the foregoing instructions;" and this also is a purely judicial comment on the evidence.

3. The third instruction is so general and universal in its terms, so utterly ignores all the legal discriminations which affect the plaintiffs' right of recovery, as to whether it be for a diminution in value of the property for injuries which are shared by the public at large, or for injuries or inconveniences resulting to plaintiffs from a legitimate use of defendant's privileges, &c., that it is hardly less than equivalent to directing the jury to bring in a verdict for the whole amount that the plaintiffs have asked for.

*H. C. Lackland,* for respondent.

I. The grant of the Legislature or of the City Council of St. Charles would go only to the extent of the power of each over the subject. Neither has the power, directly or indirectly, to deprive a man of his property, whether corporeal or incorporeal, without just compensation provided. (State Const., Art. 13, § 7 ; 21 Mo. 580, &c.)

Mere authority of law to do an act constitutes no exemption from damages resulting from that act. If the railroad company did transcend the authority constitutionally vested in them by the Legislature, their road is a nuisance, a perpetual nuisance, and every day's continuance of it is a legal wrong for which they are liable in damages after they have accrued. If they did not transcend their authority, and yet in constructing their railroad have necessarily injured the rights of others, they are equally liable to respond for prospective as well as accrued damages, and in such case they

18—VOL. XXXIV.

cannot be vexed again in a second action. (Mahon's Exec'r v. The New York Central R.R. Co., 10 Smith's N. Y. 658, &c.)

Where the act is lawful, one suit must settle the question of damages; where it is not lawful, the railroad is liable to suit as often as the damages have accrued.

Wherever a right is invaded, whether by authority of law or not, it cannot be a case of *damnum absque injuria*.

That the uses to which the defendant put these streets in front of plaintiffs' property were a perversion of said streets from the original uses to which they were dedicated, is evident from the testimony; the testimony shows that neither the public nor the plaintiffs were able to use these streets for any of the purposes of a street; that their use as streets and passage ways, either for plaintiffs or the public, were not only substantially interfered with, but totally prevented; and the testimony shows that there was no other way to and from this lot, except by those streets.

The use of the land for a railroad is totally different from that public right of passage, for which highways were designed. (Mahon's Exec'r v. New York Central R.R. Co., 10 Smith's N. Y. Reps. of Court of App., p. 658, &c.; State Const., Art. 13, Sec. 7, 21 Mo. 580, &c., 29 Mo.; Swift's Dig. 107, Ang. on Highw., § 301, &c., &c., 313, 314, &c., 319, 320, 326, 83, 93; 2 Smith's Lea. Cas., s. p. 98, &c., t. p. 182, 183–4, 189, &c.; 2 Greenf. Ev., § 616, 596.)

II. Plaintiffs, as owners of the lot adjoining, have a special property in the street in front of their premises as a street. This special property is distinct from and independent of the ownership of the soil under the street.

The evidence also shows that the public were totally debarred from using this street. Any substantial interference or obstruction, is sufficient to give a right of action, but here there was a total obstruction. (Parrot v. The Cin., Ham. & Day. R.R. Co., 10 Critchf. Ohio, 624; 10 Smith's N. Y., 658; Lackland v. The North Mo. R. R. Co., 31 Mo. 180; 11 Mo. 32; 26 Mo. 194; 2 Smith's Lea. Cas. 98; Swift's

Dig., 522; Greenl. Cruise on Real Prop., Title XXIV., § 21; 2 Greenl. Ev. § 468, 474.)

Plaintiffs, then, as owners of this lot in question, have a property in this street on which the lot fronts. If the street be a State road, or highway, the public at large or the State, represented by the Legislature, has also a qualified property therein, to-wit: the right of using it as a common road for the passage of vehicles drawn by animal power, footmen and animals. As it is a street of the city of St. Charles, the people of that city, represented by the city council, have also the same rights as the State.

The second question is, what does the grant of the city council and the charter of the railroad company authorize the defendant to do in these streets, in front of the plaintiffs' property, or what is the extent of the defendant's authority by law? If the railroad company have exceeded the privileges conferred upon them by the law, then every day's continuance of the wrong is a trespass and a nuisance.

The rule of construction for all railway grants, and for all grants of powers and privileges to corporations, is, that they must be strictly construed. Whatever is doubtful must be construed against the corporation and in favor of private property. (R. S. 1855, p. 370, § 3; Ang. on Highw., § 80 & 79; 31 Mo. 185; Swift's Digest, 105; Greenl. Cruise on Real Prop., Title XXIV. Ways, § 14 & 15; 2 Greenl. Ev. § 270.)

The terms of the ordinance of St. Charles, as set forth in defendant's answer, are, that the defendant shall have "the right of way" up Main street from Franklin street to a point one hundred feet below Clark street. How shall the expression "the right of way" be construed? It can mean only the right to pass in and out of town with their loaded freight and passenger trains, in the ordinary business of the road.

For this purpose, only a single track is necessary, and that, according to the charter of the railroad, must be so constructed as not to prevent the public from using the

street for common vehicles and ordinary purposes. (Acts 1851, p. 486, § 11.)

In this case, both the public and plaintiffs were totally prevented from using the street. The railroad only asked for a single track in this street, and the city council only granted them the right to lay a single track, as will be seen from the evidence offered by the defendant itself, taken from the records of the city council. The defendant had no pretence of authority for putting the two side tracks in this street, or for laying the main track in such a manner as to obstruct the street, by exposing the ties on the top of the ground unballasted.

There was no authority for the erection of the switch-frames or cattle-ways, or for digging and keeping open the ditches in front of this property. There was no authority for the extension of defendant's tracks and structures below Franklin street, thereby cutting off the access to the property from that direction.

There was no authority for making a regular standing place, in front of this property, for cars and trains of cars, when not in motion, or for habitually making up (switching together) trains of cars for passengers and freight, or for loading and unloading cars and trains of cars ; or for depositing the stinking filth of their cattle cars in this street; or for, in short, making this street a part and parcel of their depot yard. It was decided in the case of Norman Lackland v. The North Mo. R.R. Co., 31 Mo. 180, &c., that the City of St. Charles had no power under its charter to authorize the defendant to do the above acts.

It must also be recollected that in construing the eleventh section of the railroad charter, the said section only speaks of the public rights in streets, &c. It is entirely silent as to private rights. It left the private rights of individuals in streets, &c., just where it found them, to-wit, to be determined by the existing laws and the circumstances of each particular case.

The Legislature, in this section, or in this act, intended

only to represent the public rights in streams, highways, streets, &c., and spoke not for individuals and individual rights. Railway grants, especially where they come in contact with private property, must be strictly construed.

BATES, Judge, delivered the opinion of the court.

This is an action brought to recover damages for obstructing a highway (a street in the city of St. Charles) in front of a lot of the plaintiffs. The evidence shows a state of facts almost identical with those which appeared in the case of Norman Lackland against the same defendant, reported in 31 Mo. Rep. 181; with the addition, in this case, that, since the suit was brought, such changes have been made in the street, and in the use of it by the defendant, as removed the greater part of the obstructions.

Two cases have been before this court which had reference to obstructions of the same street, in front of lots near to that of the plaintiffs; they are the cases of Norman Lackland against the North Missouri Railroad Company, 31 Mo. 181, and Porter v. the same defendant, 33 Mo. 128. In the present case it is unnecessary to review the previous cases, and we examine only to see if this case was tried in accordance with the principles announced in the decision of those cases.

At the trial a number of instructions were given to the jury, three of which were on motion of the plaintiffs, and eight on motion of the defendant. The instructions given for the plaintiffs, if they stood alone and unqualified by those given for the defendant, would certainly have been erroneous. It becomes therefore necessary to examine them all very carefully, to see whether, taken all together, they properly stated to the jury the law applicable to the case. The true object of instructions is to enlighten the jury, and it is inconvenient and unsafe to give instructions which make it necessary to give other instructions to qualify and explain the first.

The first instruction given for the plaintiffs declares that

if the property of the plaintiffs was injured in value, or their business there incommoded or obstructed to their damage, or the ways and approaches to their property cut off, destroyed or obstructed, by reason of the acts of the defendant; 1st, in constructing the main track of the railroad in such manner as to prevent the use of the street; or, 2d, in laying the side-track close to plaintiffs' property, along the east side of the street; or, 3d, in laying the switch-track connecting the two tracks aforesaid; or, 4th, in the laying of the beams or iron rails in such a manner as to prevent the use of the street; or, 5th, in the erection of said cattle-way or switch frames, and other obstructions in said streets, such as ditches; or, 6th, by running cars and locomotives back and forth in said streets for the purpose of making up trains of cars; or, 7th, by leaving cars and trains of cars standing in said streets, in front of plaintiffs' property; or, 8th, by unloading cars; or, 9th, by using said street for the purposes of a depot yard, in such manner as to prevent the public from using said street, or so as to cut off plaintiffs' access to their property, then the jury must find for the plaintiffs.

The following objections to this instruction may be considered as cured, so far as could be done by instructions given for the defendant, namely: that it authorized a recovery by the plaintiffs for damages, 1st, by the occupation of the street for the purposes of a railroad, in its ordinary use as a means of travel and transportation; 2d, for the temporary obstruction of the street necessarily caused while the road was in process of construction; and, 3d, for damages which plaintiffs sustained in common with the public, and which were not special to them.

The instruction, however, recites nine different kinds of acts of the defendant, for either of which it directs a recovery by the plaintiffs of such damages as the evidence shows the plaintiffs have sustained. This amounts to a declaration by the court, that each of the enumerated acts was unauthorized by law. The defendant was authorized to construct a railroad in a street, and when constructed to use it

for the ordinary purposes of a railroad as a means of travel and transportation; and this instruction assumes to declare as a fact that each of the enumerated acts was not performed in accordance with the authority of the defendant, but was beyond and outside of its authority to construct and use the road; or, in other words, that each of those acts was an obstruction of the highway of such unlicensed character as was forbidden by law.

Every use of a highway is in one sense an obstruction; if a wagon or other obstruction, or other ordinary vehicle, occupy a place in a highway, it for a time obstructs the space occupied by it, and excludes other uses of the same spot; and such obstruction is entirely legitimate, if the occupation of the highway be according to the usual manner, and a person damaged by such use of the highway would have no ground of action against the owner of the wagon; but the occupation of the highway by a wagon might be so prolonged, or otherwise improperly managed, as to subject the owner of it to an action for damages caused thereby; but such liability would result, not from the use of the highway, but from the illegal manner of using it. In like manner the defendant in this case having the right to use the street, is responsible only for an illegal manner of using it; and the court, in the instruction given, has declared that each of the enumerated acts is an illegal use of the street, and the only thing left for the jury to determine was, whether the property of the plaintiffs was injured in value, or their business there incommoded or obstructed to their damage, or the ways and approaches to their property cut off, destroyed or obstructed.

But even if this instruction could be construed as leaving the jury to determine the question of fact, whether any of the enumerated acts had been done by the defendant, yet the instruction is fatally wrong in determining that each of those acts was an obstruction of the street. For example, the instruction directs a verdict for the plaintiffs, if their property has been injured in value by the laying of the

side-track close to their property, along the east side of the street; thus usurping the province of the jury in determining that the side-track did obstruct the street, or else authorizing the plaintiffs to recover because of the side-track, although it was no obstruction.

In another respect the instruction, although not fatally wrong, was calculated to embarrass the jury by its great comprehensiveness. It directs a verdict for the plaintiffs for damages sustained in any one of three ways, by any one of nine acts of the defendant; that is, it authorizes the plaintiffs to recover upon any one of *twenty-seven* different hypotheses.

The second and third instructions are erroneous in assuming that the defendant had committed the acts described in the first instruction; and it was also improper, as in the second instruction, to single out one fact relied on by defendant, and state that that fact did of itself constitute no defence.

Judgment reversed and cause remanded.

Judges Bay and Dryden concur.