## THE BOARD OF TRADE TELEGRAPH COMPANY

*v.*

## KIMBRO T. BARNETT.

*Filed at Mt. Vernon October 2, 1883—Rehearing denied Nov. Term, 1883.*

1.   ACTION—*trespass—at the suit of the owner of the fee in a highway, for an improper use of the highway.*   Trespass *quare clausum fregit* was brought by the owner of land abutting upon a public highway, in which he was also owner of the fee, against a telegraph company for entering upon the highway and erecting telegraph poles thereon without the consent of the plaintiff.   It was *held*, the action would lie.

2.   EMINENT DOMAIN—*granting use of highway for erecting telegraph poles—rights of abutting land owner who also holds the fee in the highway.*   It has been held that where the fee of a street in a town or city remains in the abutting land owner, the corporation may grant the right to a railway company to lay its track along or across the street, but the company will avail of this privilege at its peril.   If, in laying its track, it causes private injury to him who owns the fee in the adjoining premises, it must make good the damages sustained.   A distinction in this respect obtains where the municipality granting the right to lay the track owns the fee in the streets, and where the fee remains in the abutting land owner.   But it matters not, in the application of the principle, in what manner the public acquired the easement over the land,—whether by condemnation or by dedication.

3.   The same principle applies in case of the use of an ordinary highway or public road, in which the abutting land owner is the owner of the fee in the highway, for the erection of telegraph poles upon which to place the wires to be used for telegraph purposes.

4. Authority is given by statute to all telegraph companies to erect poles on which to place their wires, on all highways or public roads, by first obtaining the consent, in writing, of the county board of the county in which such highway is situated. But this permission by the county board must be understood as given subject to the constitutional inhibition that "private property shall not be taken or damaged for public use without just compensation."

5. The use of the highway for such a purpose is a new and additional burden upon the fee, not contemplated on the assessment of damages, in case the easement was obtained by condemnation, or had in view by the land owner in the case of a dedication for ordinary highway purposes, and for such additional burden the owner of the fee is entitled to compensation, or, if entry be made without an agreement with the owner, or condemnation under the statute, the owner may have his action.

APPEAL from the Appellate Court for the Fourth District; —heard in that court on appeal from the Circuit Court of Madison county; the Hon. WM. H. SNYDER, Judge, presiding.

Mr. FRANCIS C. RUSSEL, and Mr. ALLAN C. STORY, for the appellant:

The paramount question in this case is this: Is the right to erect and maintain lines of telegraph a part of the public easement in a common public highway, or is such use of the highway a new and additional burden upon the fee? We contend the erection and use of telegraph poles in the public highway is not a new servitude entitling the owner of adjacent premises, although he holds the fee in the highway, to recover damages for such additional use.

In *Thompson* v. *Hodgson*, 2 Hun, 146, the right to erect a monument in one of the streets of a village was sustained, against the claim of an owner of the fee in the street. As to the right of public authorities to authorize the building of wharves and levees in a street, see *Barney* v. *Keokuk*, 94 U. S. 324. In Iowa, railroads are not regarded as obstructions to a highway in the legal sense, nor as creating, when laid thereon, any injury to the proprietors of the adjacent lands for which they are entitled to compensation. *Milburn*

v. *Cedar Rapids*, 12 Iowa, 249; *Clinton* v. *Cedar Rapids and Missouri R. R. Co.* 24 id. 455; *Tomlin* v. *Dubuque R. R. Co.* 32 id. 106; *Cook* v. *Burlington*, id. 357; *Clinton* v. *C. and L. R. R. Co.* 37 id. 61; *Ingraham* v. *Chicago, D. and M. R. R. Co.* 38 id. 669.

The cases cited, it is true, are generally those in which the fee of the streets was in the cities respectively, but in *Haight's case*, in 4 Iowa, 199, it is held the principles laid down in all the later cases *apply as well where the title of the soil is in the adjacent proprietor as where it is in the city or a third party.*

It is true, the courts of New York, and of some other States, have held that the construction and operation of a steam railroad on a highway was an additional burden upon the fee. *Williams* v. *New York Central R. R. Co.* 16 N. Y. 97; *Wager* v. *Troy Union R. R. Co.* 25 id. 526; *Craig* v. *Rochester City R. R. Co.* 39 id. 404; *Schurmeier* v. *St. P. and P. R. R. Co.* 10 Minn. 82; *Brisbine* v. *St. P. and L. C. R. R. Co.* 23 id. 114; *Inslay* v. *U. B. R. R. Co.* 26 Conn. 249; *Lafayette, M. and B. R. R. Co.* v. *Mindoch*, 68 Ind. 137; *Ford* v. *Chicago and Northwestern Ry. Co.* 14 Wis. 609; *Blesch* v. *Chicago and Northwestern Ry. Co.* 43 id. 183; *Cape Girardeau and B., M. and G. R. R. Co.* v. *Renfro*, 58 Mo. 265. In each of these cases, however, the *main* consideration was, that the use of the street or highway by a steam railroad was *exclusive,* and virtually *deprived the public of the use of the road.*

In New York it has also been recently held that the use of a street for a horse railway was an additional burden, for the same reason. *(Craig* v. *Roch., C. and B. R. R. Co.* 39 N. Y. 404.) But in Illinois, prior to the new constitution, this court held that a steam railroad in a street or highway, if authorized by the municipal authorities, was *not* a new burden, and no damages could be recovered by the adjoining proprietor, either from the railroad company or the municipality. *Moses* v. *Railway Co.* 21 Ill. 516; *Roberts* v. *Chicago,*

26 id. 249; *Murphy* v. *Chicago,* 29 id. 279; *City of Quincy* v. *Jones,* 76 id. 231. And in the recent case of *Edwardsville R. R. Co.* v. *Sawyer,* 92 Ill. 377, SHELDON, J., adheres to the principle of these cases.

A street railway is not an additional burden to the fee, as is held in *Jersey City and B. R. Co.* v. *Jersey City and H. H. Co.* 20 N. J. Eq. 69; *Hinchman* v. *Patterson,* 17 id. 76; *Railroad Co.* v. *Heisel,* 38 Mich. 66; *Attorney General* v. *Metropolitan R. R. Co.* 125 Mass. 515. See, also, 2 Dillon on Mun. Corp. sec. 722; *Pedicord* v. *Balt. etc. Pass. Ry. Co.* 34 Md. 479; *Hiss* v. *Balt. and Hamp. Pass. Ry. Co.* 52 id. 252.

The construction of a telegraph line upon the right of way of a railway is no new burden to the fee. *Western Union Telegraph Co.* v. *Rich,* 15 Kan. 517; *Prather* v. *Railroad Co.* 52 Ind. 40.

Messrs. HAPPY & TRAVOUS, for the appellee:

Appellee was the owner of the fee of the *locus in quo,* subject only to the easement of the public for purpose of travel. Mills on Eminent Domain, sec. 51; *Gebhart* v. *Reeves,* 75 Ill. 301; *Town of Old Town* v. *Dooley,* 81 id. 255; *Pfeifer* v. *Cox,* 8 Am. Rep. 58; *Cole* v. *Drew,* id. 363; Angell on Highways, 21; Washburn on Easements, 229. See note to *Mayhew* v. *Norton,* 28 Am. Dec. p. 302, and authorities cited.

The legislature did not intend to authorize the highway commissioners to give away appellee's land; but if that had been the legislative intent it was beyond its power. *Indianapolis, Bloomington and Western R. R. Co.* v. *Hartley et al.* 67 Ill. 439; *Rigney* v. *City of Chicago,* 102 id. 64; *S. W. R. R. Co.* v. *S. and A. Tel. Co.* 46 Ga. 43.

Trespass was the proper form of action. *Indianapolis, Bloomington and Western R. R. Co.* v. *Hartley,* 67 Ill. 439; 2 Waterman on Trespass, sec. 692; Cooley on Torts, 318; note to *Mayhew* v. *Norton,* 28 Am. Dec. p. 305, and authorities there cited.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

This was an action of trespass *quare clausum fregit*, brought by Kimbro T. Barnett, against the Board of Trade Telegraph Company. The declaration is in the usual form, the *gravamen* of the action being that defendant entered with force and violence upon the premises of plaintiff, and dug holes and erected. thereon telegraph poles upon which to place its wires. The pleas of not guilty and *liberum tenementum*, originally filed to the declaration, were both withdrawn, and the matters insisted upon as a defence to the action were embraced in five special pleas. The substance of the first three pleas is, the *locus in quo* was a public highway; that defendant was and is a corporation existing under the laws of Illinois; that the acts complained of were necessarily and properly done in the building of the telegraph line of defendant along such highway, and that the building of such telegraph line was done under and according to the written and recorded consent of the county board of the county in which the premises are situated. The additional matters contained in the other special pleas add nothing to the strength of the defence, and it will not be necessary, as the case comes before this court, to state their contents. To the special pleas setting up the facts above stated, with some others of no considerable importance, with the usual fullness and formality, the circuit court sustained a general demurrer. The defendant electing to stand by its pleas of justification, the court rendered judgment as upon *nil dicit,* and proceeded to hear evidence, with a view to assess plaintiff's damages. It was proven plaintiff was the owner of the land described in the declaration; that defendant, by its employés, entered upon the premises, and commenced digging holes and putting up telegraph poles; that plaintiff asked them what authority they had for so doing, and was told they had permission from the county board. Afterwards they went on and put

up twenty-six poles along the side of the hedge, without the consent of plaintiff. The poles erected are outside of the hedge growing at the side of the highway, but close to it. In some instances the employés cut away the hedge, because it was in their way, and they also cut down two hedge trees that were intended for gate posts where they stood. It was further proven the land where the poles were erected belonged to plaintiff, subject to the right of way, and that the highway was used by the public. It was also proven the erection of the poles by defendant would render it inconvenient for plaintiff to trim his hedge with machines constructed for that purpose. Thereupon the circuit court assessed plaintiff's damages at $78, and from the judgment rendered defendant obtained an appeal to the Appellate Court for the Fourth District, where the judgment of the trial court was affirmed. A majority of the judges of the Appellate Court having certi-fied that in their opinion this "case involves a question of law of such importance, on account of collateral interests, that it should be passed upon by the Supreme Court," de-fendant brings the case to this court on its further appeal, as it is permitted to do under the Practice act.

The objection an action of trespass *quare clausum fregit* will not lie in such a case as the one being considered, is settled adversely to the position taken by defendant, in the decision of this court in *Indianapolis, Bloomington and Western R. R. Co.* v. *Hartley*, 67 Ill. 439. That, in some respects, was an analogous case, the form of action being the same, and plain-tiff was permitted to recover.

Authority is given by the statute to all telegraph com-panies to erect poles on which to place their wires, on all highways or public roads, by first obtaining the consent, in writing, of the county board of the county in which such highway is situated. Of course that permission is given subject to the constitutional inhibition, "private property shall not be taken or damaged for public use without just

compensation." Provision is also made by law for ascer-
taining the compensation to be paid to the owner when it
shall be necessary to take or damage any property for the
construction, alteration or repair of any line of telegraph.
Rev. Stat. 1874, chap. 134.

The principal question arising on the record may be stated
to be, is the right to erect and maintain lines of telegraph
thereon a part of the public easement in a common highway,
or is such a structure a new and additional burden upon the
fee, for which the owner of the fee may maintain an action?
It was held by the trial court, and its decision was affirmed
by the Appellate Court, the erection and maintenance of a
line of telegraph on the highway, although done with the
consent of the county board, was a new and additional bur-
den upon the fee, and a recovery by the owner was permitted.
The correctness of that decision is challenged on this appeal.

The question raised is important, and being one of first im-
pression in this court it has been fully considered. Although
the case has been elaborately argued, the views entertained
by the court may be briefly stated, without any extended dis-
cussion. There can be no disagreement as to the facts of
the case as they appear from the pleadings by admission on
demurrer. Only questions of law remain to be considered
on the admitted facts. As has been seen, defendant is a
corporation existing under the laws of this State, with power
to construct and use a line of telegraph in this State. Per-
mission in writing was given by the proper county board to
erect poles on the highway in question, on which to maintain
its line of telegraph, care to be taken to do no unneces-
sary injury. Plaintiff was and is the owner of the fee, and
objected to that use of the highway, but his wishes were dis-
regarded. No effort was made to agree with him as to the
damages he would sustain, nor to assess the same under the
statute. It is conceded the *locus in quo* is an ordinary high-
way, situated without the limits of any municipal corpora-

tion.   The highway was constructed over lands owned by plaintiff.   Of that no question is made.   It follows, therefore, plaintiff is the owner of the fee to the center of the highway, subject only to an easement over and upon it in favor of the public.   The position taken by defendant is, that the State can rightfully, as it has done, authorize the county board to permit defendant to construct its line of telegraph upon the highway without the consent of the abutting land owner; that it imposes no new or additional burden thereon, and that when the public acquire an easement over land, for a compensation fully paid, the public obtain all the rights the land owner had, and the State may authorize any use of it not inconsistent with its use as a highway.   On the other hand it is insisted the proprietary rights of plaintiff have been interfered with in a manner detrimental to his interests as the owner of the fee, and that the action of defendant in taking possession of his land forcibly and against his will comes within the constitutional inhibition, "private property shall not be taken or damaged without just compensation." The latter position is the one best sustained by authority, and rests on sounder principles.   It is for the reason the construction and maintenance of a telegraph line upon the highway is a new and additional burden upon the fee to which it was not contemplated it should be subjected, and for which the owner is entitled to additional compensation. The principle is, neither the State nor a municipal corporation has any rightful authority, under the constitution, to grant away the private property of the citizen, and if corporations *quasi* public, in the exercise of the right of eminent domain with which they are clothed by the sovereign power of the State, seek to appropriate it, so that they may have a benefit therefrom, every principle of justice demands they should make just compensation, whether the property taken or damaged is of little or great value.   But aside from all considerations of right and justice, the constitution has so

declared, and its mandate in that respect may not be disregarded. A case having many features in common with the one now before the court is *Indianapolis, Bloomington and Western R. R. Co.* v. *Hartley*, 67 Ill. 439. It was there said: "A distinction has been taken where the municipality granting the right to lay a track owns the fee in the street, and where the fee remains in the abutting land owner, and it seems to us it rests on sound principle, and is supported by the highest authority. Where the fee remains in the original proprietor it is immaterial how the public acquired an easement over the lands,—whether by condemnation or by dedication. It is only for the use of ordinary travel, such as we are accustomed to see on streets or highways. In case the proprietor dedicated the land, it was for no other purpose; and if it was condemned, his damages were assessed with no other view. A different use of the land can not be justified on the ground that a railway is an improved highway. Railway companies are only public corporations in a limited sense. The right of way, the road bed, and the carriages propelled-thereon, are owned by private individuals, and not by the public. Fares are charged for travel thereon for the exclusive benefit of the parties owning the road. They are constructed and equipped in the interest of private speculation, but at the same time they are intended to subserve the public good. The travel on them bears no analogy to our notions of travel on an ordinary street or highway, where every one travels at his pleasure, in his own conveyance, without paying tolls or fares. The uses are totally different, and even inconsistent. The one is exclusive in favor of private interests, and the other is open and free to all. The doctrine most in consonance with our sense of justice is, when the fee of the street remains in the abutting land owner the corporation may grant the right to the railway company to lay its track along or across any street, but the company avails of its privilege at its peril. If, in laying its

track, it causes a private injury to him who owns the fee in the adjoining premises, it must make good the damages sustained." The doctrine of this case has since been embodied in the text by Mr. Dillon, in the recent edition of his valuable work on Municipal Law, in a distinct section, and the author says it has for its support the sanction of some of the most eminent jurists in this country. At all events it is now the settled law of this State, and it is now too late to insist a different rule should be adopted. The principle of *Hartley's case* is conclusive of the one being considered. What is there said respecting the right of a railway to the use of a common highway, applies with equal force to a telegraph corporation. In the same sense the construction of a line of telegraph on the highway is an additional servitude, to which the fee of the land had not before been subjected. The servitude differs more in degree than in character, and whether the damages are great or small, the corporation asking for or appropriating to itself the benefit of such new servitude must make just compensation to the owner of the fee. In many, and perhaps in most instances, the damages may be merely nominal, but in others an actual detriment may be occasioned. That, of course, is a question to be determined from the evidence in each particular case, with which this court has no concern.

The decision of the trial court in sustaining the demurrer to the special pleas of justification is warranted by the law, and as its finding as to the damages sustained by plaintiff has been affirmed by the Appellate Court, it is, of course, conclusive on this court, and the judgment of the latter court will be affirmed.

*Judgment affirmed.*