The Julia Building Ass'n v. The Bell Telephone Company.

THE JULIA BUILDING ASSOCIATION, *Appellant*, v. THE BELL TELEPHONE COMPANY.

1. **City** : STREET, USE OF. When the public acquires a street in a city, either by condemnation, grant or dedication, it may be applied to all purposes consistent with the proper use of a street.

2. ——— : ——— : ———. It is only when the street is subjected to a new servitude inconsistent with and subversive of its proper use as a street, that the abutting land owner can complain.

3. **Telephone Poles** : STREET. The erection and maintenance of telephone poles are a proper use of a street.

4. ——— : INJURY TO ADJOINING PROPERTY : DAMAGES. *Semble*, that the owner of the adjoining premises cannot claim compensation for damages resulting thereto from such user of the street.

5. ——— : ——— : ———. In no event would compensation in such case be allowed for speculative or contingent damages.

6. ——— : ——— : ———. Compensation could, however, be recoverable by the adjoining owner for damages resulting to his property from the unskillful and negligent conduct of the work.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

*Madill & Ralston* for appellant.

(1) The plaintiff is the owner in fee of the western half of Sixth street between Olive and Locust streets. *Newhall v. Ireson,* 8 Cush. 595 ; *Nichols v. Suncork Mfg. Co.,* 34 N. H. 345 ; *Adams v. Railroad,* 33 Barb. 414 ; *Hannibal Bridge Co. v. Schaubacker,* 57 Mo. 582 ; *Higbee v. Railroad,* 19 N. J. 276 ; *Paul v. Carver,* 26 Pa. St. 224. (2) The right of the city in Sixth street was a mere easement, the ownership of the fee being in plaintiff and the evidence shows that the walls placed therein, the sidewalk thereon and the area or basement enclosed thereby are exclusively the private property of the plaintiff, rightfully and lawfully there. (3) If said wall and basement are the *private property* of the plaintiff, then it follows that neither the state nor the city of St. Louis nor the defendant corporation has any rights therein for any telegraph or telephone purposes whatsoever and that no such rights as are claimed by defendant can lawfully be acquired without proper condemnation proceedings. *Williams v. Road Co.,* 21 Mo. 580 ; *Cape, etc., v. Renfroe,* 58 Mo. 265 ; *Craig v. Rochester, etc.,* 39 N. Y. 404 ; *Broadwell v. City of Kansas,* 75 Mo. 213 ; *State v. Laverack,* 34 N. J. L. 201 ; *Higbee v. Railroad,* 19 N. J. 116. (4) The erection and maintenance of the two telephone poles complained of will obstruct the free and convenient access to plaintiff's premises for purposes of business and otherwise, as

formerly enjoyed, as well as impair the use and enjoyment of the premises, as a place of business, weaken and impair the walls thereof, and depreciate their market and rental value to a very large extent. Under this state of facts, the latest and best considered cases hold, under the constitutional provisions declaring "that private property shall not be taken or damaged for public use without just compensation," and under laws requiring compensation to be made where lands are "injuriously affected," (construed as equivalent to "damaged") by the construction or execution of public improvements, that compensation ought to be, and must be, made. Const. of Mo., art. 2, sec. 21 ; *City of Pekin v. Brereton,* 67 Ill. 477 ; *Chicago & Pacific Railroad Co. v. Francis,* 70 Ill. 238 ; *Borough of New Brighton v. United Presb. Church,* 96 Pa. St. 331 ; *Hendrick's Appeal,* 103 Pa. St. 358 ; *City of Denver v. Bayer,* 7 Col. 113 ; *Beckett v. Railroad,* L. R. 3 C. P. 82 ; *Caledonian Ry. Co. v. Walker's Trustees,* 7 L. R. Appeal Case, 259 ; *Rigney v. Chicago,* 102 Ill. 64 ; *Transportation Co. v. Chicago,* 99 U. S. 642 ; *Chicago, etc., v. Stein,* 75 Ill. 41 ; *Householder v. Kansas City,* 83 Mo. 488 ; *Dusenberry v. Telegraph Co.,* 30 Hun, 480 ; *Tiffany v. U. S., etc.,* 67 How. Pr. 73 ; *Reardon v. City, etc.,* 5 West Coast Rep. 758. (5) The court improperly admitted in evidence ordinance number 10,691, offered by defendant for the purpose of showing that the excavation of the sidewalk and the building of said walls were unauthorized and illegal, because no *written permission* of the street commissioner was shown by plaintiff as required by said ordinance. (6) The defendant corporation is a mere private corporation, not subserving any public use, in any proper or legal sense of the term, which has encroached and still encroaches on the public streets and highways of St. Louis without any warrant of law whatever, and which encroachments on the said streets constitute a common nuisance, abatable and in-

dictable at common law and under the statute. (7) Even if it be held that the defendant corporation has the statutory right to erect its poles on Sixth street, yet it proposes not only to remove the wall of plaintiff's basement, but also to put and permanently maintain its poles therein without paying any compensation. The proposed acts of the defendant corporation will amount to both a "taking" and "damage" of private property within the meaning of the constitution and laws of Missouri, as, we submit, has already been shown. In such cases an injunction will always issue, regardless of the amount of damage. *McElroy v. City of Kansas*, 21 Fed. Rep. 257 ; *Mason v. The Harpers Ferry Bridge Co.*, 17 West Va. 396 ; *The St. Louis Railroad Co. v. The Northwestern St. Louis Ry. Co.*, 69 Mo. 65 ; *Railroad Co. v. Owings*, 15 Md. 199.

*Henry Hitchcock* for respondent.

(1) This is not a case for an injunction. When an injury complained of is of obstruction to a street, it must affirmatively appear that such obstruction causes or will cause real and substantial injury. 1 High. on Inj., sec. 824 ; *Gay v. Mut. Tel. Co.*, 12 Mo. App. 485 ; *Ibid.* 494 ; *Bigelow v. Hartford, etc.*, 14 Conn. 565 ; *Hamilton v. New York*, 9 Paige, 171. (2) But even if the poles did constitute an obstruction to public travel the plaintiff could not rely thereon for two reasons. (*a*) Because such injury would not be peculiar to plaintiff, if plaintiff were a natural person, but would be sustained by it in common with the public generally. 1 High. on Inj., sec. 762 ; *Illinois, etc., v. St. Louis*, 2 Dil. 90 ; *Werth v. Springfield*, 78 Mo. 107 ; *Rigney v. Chicago*, 107 Ill. 64. (*b*) Because plaintiff is not a natural person, but an invisible, intangible corporation, and in the nature of things cannot walk the streets nor be obstructed in so doing by a telephone pole. (3) Equity will not grant

relief by injunction in respect of injuries which are in their nature purely contingent upon circumstances which may or may not take place. *Flint v. Russell*, 5 Dil. 151 ; *Rounsoville v. Kohlein*, 15 Cent. Law Jour. ; 1 High. on Inj., secs. 742 and 743. (4) Even if the apprehended injuries are not contingent and if they could occur the plaintiff would have a sufficient remedy for them at law. 1 High. on Inj., sec. 740 ; Wood on Nuisances, secs. 799, 801, 812, 816, *et seq.* (5) A marked distinction exists between the extent and nature of the public uses or servitudes, to which land dedicated for a street in a populous city thereby becomes subject, and those uses or servitudes to which a country road or a village highway or street becomes subject as such. Angell on Highways, sec. 312 ; Thompson on Highways (Mills 3 Ed.) chap. 2, sec. 1 ; *Cincinnati v. White*, 6 Pet. 432 ; *People v. Kerr*, 27 N. Y. 201 ; 2 Dil. on Mun. Corp. (3 Ed.) secs. 688, 698. (6) The dedication leaves in the abutting owner his right in the soil for all purposes which are consistent with the full enjoyment of the easement acquired by the public or by any corporation by authority derived constitutionally from the legislature. *Denniston v. Clarke*, 125 Mass. 216 ; 2 Dillon on Mun. Corp. (3 Ed.) secs. 678, 687 ; *City of Morrison v. Hinkson*, 87 Ill. 587 ; *Barney v. Keokuk*, 94 U. S. 340 ; *Transportation Co. v. Chicago*, 99 U. S. 640. (7) The street can be applied to any use reasonably incident to the public street, as such. Cases last cited, *supra ;* also, *People v. Kerr*, 27 N. Y. 202–3 ; 50 N. Y. 206 ; 62 N. Y. 390. (8) Respondent is not, as appellant contends, merely a private corporation subserving no public use and, therefore, guilty of a nuisance in encroaching on the public streets.

NORTON, J.—This case is before us on plaintiff's appeal from the judgment of the St. Louis court of appeals affirming the judgment of the circuit court of the city of St. Louis, in dismissing plaintiff's bill, invoking the injunctive powers of the court to restrain and enjoin de-

fendant from erecting and maintaining telephone poles and wires at two points on Sixth street between Locust and Olive streets in said city. The grounds for the relief sought and asked for by plaintiff, as stated in the petition, are substantially that plaintiff is the owner of a lot of ground, abutting and fronting on Sixth street in the city of St. Louis, the entire length of said street between Olive and Locust streets in said city, on which it had erected a building four stories high, used as a retail store for the sale of general, and staple and fancy merchandise ; that said building above the surface of the ground extends to within about twelve feet of the curb stone of said street, and below the surface the basement story of said building extends to the line of the curb stone of said street, and is used for storing, exhibiting, packing and marking merchandise, and must be so used in order to utilise said building for the purposes for which it was built; that plaintiff, with full right and express permission of the municipal authorities of the city, did in the construction of said building, build at great cost, a heavy stone wall laid in cement, as the outer and exterior wall of the basement of said building, the outer line of said wall being Sixth street ; and also built at great cost a brick wall, just inside and a few inches from said exterior stone wall ; and that plaintiff, by permission of the city authorities, laid a little above the level of said street large slabs of stone about twelve feet long and several feet wide, one end of which rested on said wall, and extended back to said building, which said slabs constituted a pavement along said Sixth street and also a covering or roof for a considerable portion of said basement, and are essential to its protection. It is also averred in the petition that defendants without any authority are engaged in cutting holes through said slabs of stone, and intend to remove parts of said stone wall, and place through said holes being cut, and down in the vacancies or holes to be made in said stone wall large timbers or poles to ex-

tend many feet above said slabs of stone, to be retained permanently, and on which are to be stretched a large number of wires to be used for telephonic purposes; that said acts, if permitted to be done, will be a continuing nuisance and constitute a continuing danger to life and property connected with said building, and the business carried on therein, and to persons and vehicles having occasion to visit said building, and will cause and result in great and daily recurring loss and injury to said premises and building and to plaintiff, for which it has no adequate remedy at law. The petition concludes with a prayer asking the court to restrain defendant from doing the acts being done and threatened to be done.

The answer of defendants denies that they are or either of them without license or authority, is or have been engaged in cutting holes in the slabs of rock, or that they are about to take out or remove parts of said stone wall as alleged in the petition, or erect and maintain poles with wires strung on the same, so as to constitute a continuing nuisance, or to the injury of plaintiff as charged in the petition. It admits that in the construction of said building, the space covered by the sidewalk on Sixth street was excavated and dug out by plaintiff and that the said sidewalk was then re-laid over said excavation, and that part of the building below the surface was so constructed by resting the walls of the building upon piers or arches with spaces under or between them, as to enable persons occupying the building to use in connection with the basement story thereof, the said excavation or hollow space under the sidewalk, and that this space is so used by the William Barr Dry Goods Company. The answer denies that the said stone wall is a part of said building, other than that it is availed of as the eastern wall of said excavation under the sidewalk along Sixth street, which wall the answer alleges was built because of said excavation and

in order to protect the soil of said street from caving in to the injury of the street, and also to serve as a support for the eastern edge of the stone slabs with which the sidewalk or pavement was re-laid. It is then averred in the answer that the Bell Telephone Company of Missouri is a telephone corporation duly organized under the laws of the state, to which the right is given to erect and maintain poles for telephone wires along and across public roads and streets, and that since the year 1879 the said company, for the purposes of its business and the service of the public, has erected in and along the streets of the city of St. Louis more than one thousand poles, and that it has been fully authorized and permitted by the proper authorities of said city to erect and maintain poles along Sixth street, and that in pursuance of such authority to cut holes on the outer edge of the sidewalk, just inside the curbstone at two points and no more through the stone slabs constituting the pavement, on Sixth street between Olive and Locust streets, the distance between said streets being two hundred and seventy feet; that in order to securely place said poles it was necessary to cut said holes, and also necessary that portions of said outer stone wall should be removed, so that said poles might be sunk or planted to a sufficient depth to remain firm and safe against accidents; that defendant was proceeding to do this work in a careful and skillful manner with competent workmen, and that no such results would follow the execution and completion of the work, as are averred in the petition.

It is shown by the evidence that the ground on which the building of plaintiff was erected had a frontage of about two hundred and seventy feet on Sixth street, and that defendant had permission of the proper city authorities to erect and maintain two telephone poles at the outer edge of the pavement, and just inside the curb stone of Sixth street, each one of them being eighteen inches thick at the bottom and tapering gradually to the

top, and each of them being about sixty feet long ; that defendant in pursuance of this permission and authority conferred upon it by section 879, Revised Statutes, was proceeding to erect said poles and as preliminary to its doing so was proceeding to cut holes through the slab stones composing the pavement in front of plaintiff's building, and to displace and remove so much of the exterior or retaining stone wall built by plaintiff, as set forth in the petition, as would allow the insertion of said poles through said wall to the depth of several feet. It is also shown by the evidence that the excavation under the pavement was made by plaintiff with the acquiescence, if not by the express permission of the city, and I will here say that for the purposes of this case it will. be assumed that such acquiescence was equivalent to express permission. It is also shown that such excavation made it necessary to build a strong retaining wall in order to prevent the earth from the street outside the pavement from caving in on the space made vacant by the removal of the earth in making the excavation. It is also shown that the lot or lots of ground on which plaintiff's house is built, as well as the land in that vicinity, was originally or formerly owned by Chouteau and Lucas, and that in 1816, Sixth street was dedicated by them for street purposes, and has ever since been used as a street ; that the plat containing this dedication was duly acknowledged and recorded ; that plaintiff is the owner in fee of the ground on which the building is erected, having acquired all the title of said Chouteau and Lucas. It is admitted that the Barr Dry Goods Company was occupying said building under a lease having some years to run, and that said company was using said building as a retail store for general and staple and fancy dry goods, and it is shown by the evidence that said company was doing a large and extensive business, and that the house was thronged daily with a great number of persons having access to the building on said Sixth street, and that hundreds of carriages were daily driven to said building

on said street numbering as testified to as many as one thousand in one day.

Under the above state of facts it may be conceded that inasmuch as the plaintiff is the owner in fee of the land abutting on Sixth street, that it is under the laws in force in 1816, also the owner in fee to the centre of said street. While this is so, such ownership is subject to all the uses to which such street can be properly devoted under the dedication made by Chouteau and Lucas in 1816. " When one claims land as being part of a street adjoining the premises described in his deed, he cannot also insist that the land is not subject to a servitude as such street. It is only by assuming that it is a street, that he acquires any title to the land therein. And being a part of the street his title is subject to the easement over it." But it is argued that the erection of telephone poles and stringing wires upon the same as a means of transmitting oral communications instantaneously between distant points in said city is not a use to which Sixth street may, under the dedication, be properly applied, but that it is the imposition of a new and additional servitude. Hence it becomes material to determine whether such use is permissible, as the rights of the parties to this controversy in a great measure depend on this question.

A highway may be said to be nothing but an easement on the land and that the public have no other right in it than the right of passage, with the powers and privileges incident to the right. " While this rule as to the extent of the interest which the public acquires in highways is strictly true as to highways in the country, it must be taken with some limitation as to the streets of a city or large village. There are certain uses, such as the construction of sewers, the laying of gas and water pipes to which the latter are generally applied. These— called urban servitude—are the necessary incidents of streets in large cities, and are paramount to the rights of the owner in fee. Whether the streets be laid out, and

opened upon property owned by the corporation, or whether they become public streets by dedication, or by grant, or upon compensation being made to the owner of the fee, they have all the incidents attached to them which are necessary to their full enjoyment as streets; and the corporation has the power to authorize their appropriation to all such uses as are conducive to the public good and do not interfere with their complete and unrestricted use as highways; and in doing so it is not obliged to confine itself to such uses as have already been permitted. As civilization advances new uses may be found expedient." Angell on Corp., sec. 312; High. Thompson on Highways, chapter 2, p. 25-7.

In 1816 when Sixth street was dedicated by Chouteau and Lucas to the public, St. Louis was a small French village and the necessity for devoting any part of its streets for the construction of sewers, water and gas pipes did not exist; at that time street horse railroads were unknown and the transmission of messages by means of electricity was not only unknown, but not thought of. But in the advance of civilization and the growth of the village into a large and populous city, public necessity has demanded and required the devotion of many of its streets to the above uses, and hence the laying of tracks of street horse railroads in its streets has been authorized and sanctioned both by legislative and municipal enactment, and it has been held that such use of a street is not an improper use. These streets are required by the public to promote trade and facilitate communications in the daily transactions of business between the citizens of one part of the city with those of another, as well as to accommodate the public at large in these respects. If a citizen living or doing business on one end of Sixth street wishes to communicate with a citizen living and doing business on the other end, or at any intermediate point he is entitled to use the street, either on foot, on

horseback, or in a carriage, or other vehicle in bearing his message. The defendants in this case propose to use the street by making the telephone poles and wires the messenger to bear such communications instantaneously and with more dispatch than in any of the above methods, or any other known method of bearing oral communications. Not only would such communications be borne with more dispatch, but, to the extent of the number of communications daily transmitted by it, the street would be relieved of that number of footmen, horsemen or carriages. If a thousand messages were daily transmitted by means of telephone poles, wires and other appliances used in telephoning, the street through these means would serve the same purpose, which would otherwise require its use either by a thousand footmen, horsemen or carriages to effectuate the same purpose. In this view of it the erection of telephone poles and wires for transmission of oral messages, so far from imposing a new and additional servitude would, to the extent of each message transmitted, relieve the street of a servitude or use by a footman, horseman or carriage.

If it be true, as laid down by the authorities herein cited, that when the public acquires the right to a street, either by dedication, grant or condemnation, the municipality has the power to appropriate it, not only to such uses as are common and in vogue at the time of its acquisition, but also to such new uses as advanced civilization may suggest, as conducive to the public good, the conclusion is inevitable that the use of Sixth street in the manner and for the purposes proposed is allowable, for it cannot with any show of reason be denied, that the means these appliances would afford for the instantaneous transmission of communications for the transaction of business, without resorting to the slower and common methods of bearing them, would be conducive

to the public good, and make the street by these means serve one of the chief purposes for which it was dedicated.

But it is argued that the erection of two telephone poles, each eighteen inches at the bottom with a gradual taper to the top would obstruct the street, and deny to the public the complete and unrestricted use of the street. This argument I think is more specious than sound. It is true, that to the extent of the space of eighteen inches each of the poles proposed to be erected would be an obstruction, but the same could be said of lamp posts erected on the streets of a city, the necessities of which might require its streets to be lighted with oil, gas, or electric lights ; and yet no one would be heard to complain that the lamp posts constituted such an obstruction or impediment to the free use of the street as to demand their removal. A in walking along the pavement of Sixth street would obstruct so much of the sidewalk as for the time being he occupied, and to that extent the free and unobstructed use of the sidewalk would be denied to B walking just behind A, or immediately in front of and approaching him. The carriage or wagon being driven by C in the street would be an obstruction to the carriage or wagon being driven by D, just in front of and approaching the carriage being driven by C, and which would have to be avoided by the one or the other turning to the right or left, as the case might be, and yet each would have the right thus to obstruct the street for the time with his carriage or wagon because such obstruction is necessary to the use of the street in that way. Take the case of a street horse railroad, with its rails permanently embedded in the centre of the street, upon which its cars are placed, confined to the track between its rails, drawn by horses or mules along the entire length of its line during all the time the street is being generally used, and incapable of being turned either to the right or left, except at its tracks or turnouts, and we have a serious and permanent obstruction to the free use of the

street by footmen, horsemen, carriages and wagons, and yet it has been held not only that such an obstruction, but railroads operated by steam, are permissible, because such methods of transportation and travel are among those to which the street may be properly applied, as not being inconsistent with its free and unrestricted use. *Randle v. Railroad*, 65 Mo. 325 ; *Railroad v. The City of St. Louis*, 66 Mo. 228 ; *Porter v. Railroad*, 33 Mo. 128 ; *Lackland v. Railroad*, 34 Mo. 259 ; *Tate v. Railroad*, 64 Mo. 150.

It is also argued by the learned counsel that defendants in making holes through the slab stones, and in removing portions of the stone wall in which to plant the poles, are invading the property rights of plaintiff in appropriating private property to public use without compensation. The ownership of the soil by plaintiff to the centre of Sixth street, being subject to all the uses to which the street could properly be devoted, and the erection of telephone poles as proposed, being one of the uses to which the street may thus be devoted, defendants, having obtained authority from the legislature as well as the city, would have had the right to remove so much of the soil (where the wall now stands) had it not been removed as to allow the poles to be securely and safely planted against accidents, and so as to answer the public purposes intended to be accomplished by their erection, without being subject to the charge of appropriating private property to a public use without compensation. The earth where this retaining exterior wall was built was the private property of plaintiff, subject, however, by reason of the dedication, to the paramount right of the public to use the street in any way to which it might be properly devoted as a street. Chouteau and Lucas, the dedicators of this street, though retaining the ownership in fee of the soil, agreed by dedicating it, that the public might appropriate so much of the soil as would make the street available for all the purposes of a street, and the

plaintiff who claims under them, is bound by all the consequences flowing from the dedication. It, therefore, follows that if the earth composing a part of the street where the stone wall built by plaintiff now stands, had not been removed, that defendants, without infringing plaintiff's right of property, could rightfully have displaced so much of it as would have allowed the secure planting of the poles. The stone wall in question erected by plaintiff to supply the place of the earth removed, sustains the same relation to the street and the right of the public to use it that the earth itself would have sustained had it never been removed. The removal of the earth created the necessity, so far as the street was concerned, for building the stone wall, and if plaintiff's private property in the earth removed, could, before its removal by virtue of the street dedication, have been used so as to allow holes to be dug for planting telephone poles, the stone wall built to supply the place of the removed earth, though the private property of plaintiff, is nevertheless as subject to such use for street purposes, as the removed earth which it represents would have been had it not been removed.

The principle here stated is fully recognized by this court in the case of *Ferrenbach v. Turner*, 86 Mo. 416, where it was held that the city had the right to fill up wells, without compensation to the lot owners who had been permitted by the city to dig them in the streets, as affirming the doctrine announced in the case of *Belcher Sugar Refining Co. v. St. Louis Grain Elevator Co.*, 82 Mo. 121, that the city would not contract away the streets for private purposes. In the disposition of the question involved in that case, as well as in this, it is there said : " The power to regulate the use of streets is not limited to a mere right of way, but extends to all beneficial uses which the public good and convenience may require from time to time, as for laying gas, water and sewer pipes, and the like. New uses are constantly arising. All these

uses and many others may be made of the streets without the consent of the lot owners. Private rights must yield to them. Dill. on Mun. Corp. (3 Ed.) sec. 690. So, too, the local authorities may build reservoirs and cisterns in the streets. *West v. Bancroft*, 32 Vt. 367. All these uses are to be regarded as included in the original appropriation, and it would not do to curtail the legislative power in these respects." I think it may be safely affirmed that all the authorities, to which we have been cited by counsel on both sides of this case, agree, that when the public acquires a street, either by condemnation, grant or dedication, that it may be applied to all uses consistent with, and not subversive of the proper uses of a street, and not inconsistent with the uses contemplated in the dedication, grant or condemnation, and that it is only when the street is subjected to a new servitude, inconsistent with and subversive of its use as a street, that the abutting owner can complain. The diversity of opinion is not as to the rule itself, but as to its application, that is, as to whether this or that particular use is not consistent with the proper use of the street. While in this state laying down the rails of a railroad operated by steam in the streets of a town or city, when authorized by the legislature, is deemed to be a use not inconsistent with the proper use of such streets, the courts of New York and Illinois have held otherwise as to railroads operated by steam, but not as to street horse railroads.

We have been cited to the case of the *Board of Trade Telegraph Co. v. Barnett*, 107 Ill. 507, as sustaining the proposition that the use to which Sixth street is proposed to be put is inconsistent with the proper use of said street. That case simply decides that the erection of telegraph poles along a highway in the country is inconsistent with the proper use of the highway. When the distinction between roads in the country and streets in a city, as to the urban servitude which may be imposed on the latter, is borne in mind, the opinion referred to,

though entitled to respectful consideration, is not even persuasive authority in considering the question whether such an use of a street in a city is a proper one. But it is argued that, as by article 2, section 21, of our constitution it is provided : "That private property shall not be taken or damaged for public use without just compensation," that even though plaintiff's private property is not taken in erecting the poles in question, that plaintiff must be compensated for any damage resulting from their erection which is peculiar to its adjacent property. If the conclusions announced in the foregoing part of this opinion, that all the uses to which a street may properly be devoted are to be regarded as permitted by and included in the original appropriation or dedication of the street, and that the erection and maintenance of telephone poles as proposed, is one of these uses, and that in digging holes through the stone slabs and stone walls in which to plant them, there is no taking of private property of the abutting lot owner entitling him to compensation, are correct, it would seem logically to follow, that damages resulting from such use need not be compensated for. If by reason of the dedication the public have the right to apply the private property of the plaintiff to the use proposed, without his being entitled to compensation, how can it be that it becomes entitled to compensation for damages, flowing as an incident from an act which the dedicator by his dedication has authorized to be done ?

If the dedication of the street is sufficiently operative to allow private property in the soil of the street to be actually invaded, and physically taken for a street use without compensation, why is it not sufficiently operative, if in such taking damages ensue, to relieve the taker from the payment of such damages ? If by dedicating property for a street, the dedicator gives up his right to compensation for the uses included in the dedication, how can it be said that he does not also

give up his right to compensation for damages to adjacent property not taken, resulting from the application of the street to a use which by his dedication he authorized it to be put? Without returning, but waiving an answer to these questions, let it be conceded for the purposes of this case, as is contended by counsel, that it has been held by this court in the cases of *Werth v. City of Springfield*, 78 Mo. 107 and *Householder v. City of Kansas*, 83 Mo. 488, that damages resulting from changing the grade of a street can be recovered by an adjacent lot owner, yet such damages to be recoverable, as was said by Hickey, C. J., in his concurring opinion in the case of *Rigney v. City of Chicago*, 102 Ill. 64, relied upon and cited by counsel, must be real and substantial and flow from a sudden and extraordinary change of grade, and not from such improvements of the street in any ordinary and reasonable mode deemed beneficial to the public good, for as to these the lot owner must be assumed to have consented.

The evidence in this case has failed to satisfy us that the damage against which relief is sought is of this character. That on the part of plaintiff tended to show that the action of the wind would be likely to cause the poles to vibrate so as to crumble the cement or mortar between the poles and the stone, and allow water to percolate into the basement between the stone wall and brick wall, and that if it percolated in sufficient quantities to cause dampness in the basement, the goods kept there would be injured by mould, and that this, together with the obstruction of the sidewalk with two poles, would greatly lessen the rental value of the building. The evidence on the part of defendant tended to show that it was practicable to so insert the poles that no such results would follow; that a number of poles had been so inserted in other streets of the city without any such injurious results. While the evidence of defendant tended to show that no damage would result if the work were,

done in a skillful and workmanlike manner, that of plaintiff only tended to show speculative and contingent damages resting in idea ; that is, if the wind caused the poles to vibrate so as to occasion. crevices, and if water percolated through these crevices in sufficient quantities to so dampen the basement as to mould the goods kept there, damages would result. If the damages anticipated should come to pass by reason of the work being done unskillfully and negligently, plaintiff would be entitled to redress. Judgment affirmed. Judges Black and Ray concurring. Henry, C. J., and Sherwood, J., dissent.

HENRY, C. J., DISSENTING.—I do not concur in the foregoing opinion. It cannot be too often repeated that : " When land is condemned for a special purpose, on the score of public utility, the sequestration is limited to that particular use." *Imlay v. Railroad*, 26 Conn. 255. "The grant of a right of way for one purpose, will not authorize the use of the road for another and different purpose." *Williams v. Natural Bridge, etc., Co.*, 21 Mo. 582 ; *Cape Girardeau, etc., v. Renfroe*, 58 Mo. 265 ; *Belcher Sugar Refining Co. v. St. Louis Grain Elevator Co.*, 82 Mo. 121. I have no doubt that when property is dedicated, or condemned, for a street, the dedicator is presumed to have in contemplation all the uses generally made of streets, and all such as the necessities of the public may subsequently require, although unheard of when the dedication or condemnation occurred ; provided such additional use is consistent with that for which the property was dedicated, or condemned, in the first instance. Sewers, and gas and water pipes, may be constructed and laid in public streets, because from time immemorial, streets in cities have been so used, and, therefore, such uses of the street are presumed to have been contemplated. Streets are public thoroughfares for travel, on foot, on horseback, and in vehicles. Street railways have been allowed on streets, on the

ground that such is one mode of traveling, and the car is a vehicle for the conveyance of passengers from one part of a city to another. Such use of the street "is not inconsistent with the public uses of a public street, but in aid of such uses." *Story v. New York Elevated Railroad Co.*, 90 N. Y. 173. It is, to some extent, an obstruction in the street. So is every wagon, buggy, and carriage, while in the street, an obstruction, but such obstruction occurs in the legitimate use of the street.

What connection, or kinship is there between traveling on a highway and talking through a telephone? Telephones might be established and operated in the city of St. Louis, if there was not a street in the city. It is true that: "The mode of using a street may and must change from time to time as the wants of commerce, or of the public, may require," but the additional use must be consistent with, and germane to, that for which it was originally dedicated, or condemned. We do not understand that this doctrine is, in express terms, controverted, but it is insisted that the planting of telephone poles in the street is not a use of the street inconsistent with that for which it was dedicated. If it is, there can be no question, under our present constitution, which forbids the taking, or *damaging* of private property for public use, without just compensation, that plaintiff has the right to have her damages assessed and paid, before the property can be used as proposed. That the damage is large or small does not affect the principle. If but one dollar, still it must be ascertained and paid to the property holder.

If planting telephone poles in the street of a city is not foreign to the use of the street for general street purposes, it is difficult to conceive what kind of a structure would not be warranted on the plea that the public interest demanded it. If one line of poles may be planted along the sidewalk, the same principle would justify the planting of a line in the middle of the street, and if one.

then two, or as many more by competing companies, as would accomplish a total obstruction of public travel over the street; and yet, if such is a legitimate use of the street, its total destruction, as a highway, would have to be tolerated. Can the rights of property be frittered away and destroyed, and constitutional guaranties nullified by such subterfuges? If so, drop by drop, the life blood of the constitution may be drawn, and its ultimate abrogation effected. A street is not necessary to the construction or operation of telephones. If they required, as an elevated railway, a structure above the surface, which would exclude the light from the building of an abutting owner, using no more of the surface than the pole would occupy, would this be *damnum absque injuria?* That it requires no such structure, and the injury to the adjoining premises is but slight, only such as arises from the planting and maintenance of the pole, does not affect the principle. Or, suppose that the construction of a telephone required brick or stone columns occupying ten feet square of the surface of the street, could this be maintained as a legitimate use of the street? So far from a telephone being such a use of the street as was contemplated in the dedication, it is intended as and is, in fact, a substitute, in part obviating the necessity for a street, so far as the transmission of verbal messages is concerned. If the transmission of messages by messenger boys, or vehicles, was the only use for which a street would be necessary, it might be vacated on the establishment of a general telephone system in the city, without in the least interfering with the operation of a telephone.

An elevated street railway which is operated solely for the purpose of carrying persons to and fro in a city, is a use of the street more consistent with, and germane to, that for which it was condemned or dedicated, than a telephone can possibly be; yet, it was held, in *Story v The Elevated Street Ry. Co., supra,* that it was a struc-

ture useless for general street purposes and foreign thereto. It was also held, in that case, to be a taking of private property, under a constitutional provision not so broad as ours, only forbidding the *taking* of private property for public use without just compensation, while ours also forbids the *damaging* of private property, etc. *Board of Trade Telegraph Co. v. Barnett*, 107 Ill. 507. If planting telephone poles in the street is a legitimate use of the street, the telephone company had no occasion to get permission from the city to set them in the street. Every individual, including corporations, may make any legitimate use of the street without the permission of the city, which can only regulate such use, but does not confer the right which it derived from the dedication.

There are really no disputed questions of law in this case, but the difference between us arises in the application of conceded constitutional principles. Judge Sherwood concurs with me.