## JACKSON v. CHICAGO, S. F. & C. RY. Co.

*(Circuit Court, W. D. Missouri, W. D.    March 3, 1890.)*

1. EMINENT DOMAIN—DAMAGE TO ADJOINING PROPERTY—DIVERSION OF BUSINESS.
   The owner of land abutting on a street over which a railroad has been built, with the consent of the municipality, cannot recover from the railroad company for loss of trade occasioned by the diversion of travel to another street on account of the presence of the railroad, since such damage is not peculiar to himself.

2. SAME—GRADING STREET.
   A railroad company which has raised the grade of a street on which its road is built to a point within a few inches of the sidewalk, but not quite as high as the grade of its track, is not liable therefor to the owner of property fronting on such street, where it appears that the raising of the grade is an improvement to the street, and that the grade of the track is not high enough to obstruct the access to such property.

3. RAILROAD COMPANIES—DRAINAGE—CITY STREETS.
   Rev. St. Mo. 1879, § 810, which provides that railroad companies, constructing any railroad in any county of the state, shall construct and maintain suitable ditches to carry off water whose flow has been obstructed by the construction of their railroads, does not apply to railroads constructed along a city street, and a railroad company constructing a ditch in such street, without municipal permission, is liable to the owners of adjoining property for damage to the rental value thereof caused by such ditch.

At Law.

*J. L. Farris* and *Ball & Hamilton*, for plaintiff.

*Gardiner Lathrop* and *C. F. Garner, Sr.*, for defendant.

PHILIPS, J.    This is an action for damages arising from the construction of a railroad along a street in front of plaintiff's store-room in the town of Camden, Ray county, Mo.    Camden is a municipal corporation, organized under the General Statutes.    The defendant is a railroad corporation organized under the laws of the state of Illinois.    Camden is a small town of a few hundred people, with one principal business street, known as "Front Street," running through the town east and west, about 60 feet in width.    Plaintiff's business house fronts on this street, with a street running north and south on the east side of the store-room.    On the west side of this store-room is a warehouse or storage-room, used by plaintiff in connection with his mercantile business, the entrance to which is from said Front street.    The Missouri river runs in front of this town, and parallel with said Front street, with no other street between it and said Front street.    Between the river and said street is the track of the Wabash Railroad Company, the depot of which is some distance to the east of plaintiff's property.

The material allegations of the petition are that, prior to the acts complained of, the said Front street was dedicated and used as a public highway; that in the year 1887 "the defendant, without authority of law and in violation of the rights of the plaintiff, wrongfully constructed its railroad track on said main street in front of the lot and buildings aforesaid, dug ditches to a great depth and width, erected high embankments, and changed greatly the grade of said street, whereby said street, with its crossings, is and was so obstructed that it cannot be

used by plaintiff for the benefit of his lot and buildings aforesaid; that the ingress and egress to plaintiff's property is totally destroyed by the acts of defendant aforesaid, to his damage in the sum of twenty-five hundred dollars." On the face of the allegations of the petition, that the defendant, without authority of law, had wrongfully constructed its railroad tracks on said street, it would seem that the plaintiff was proceeding on the theory of a malfeasance on the part of defendant, and that the damages claimed by him were incident to such an act; whereas, the undisputed fact is that the defendant so built its road under permission and authority from the town, given in an ordinance theretofore duly adopted, for which defendant paid the town $10,000, and erected depot, etc., thereon, which grant the town under its charter was authorized to make. There is therefore some show of authority for the position taken by defendant that the plaintiff, under such a pleading, ought not to be permitted to recover as for a malfeasance. *Randle* v. *Railroad Co.*, 65 Mo. 332.

But, giving the plaintiff the benefit of the doubt in my mind as to whether this technical rule is applicable to this case, I will proceed to consider the cause on its merits. The adjacent property owner on a street has a definite, recognized right to and interest in the street in front of his property. It is a right to the free use of the street, in order to the enjoyment of his property, as a means or access thereto and therefrom. While this is so, the public likewise have an equal recognized right in such street which has been dedicated to the public use. Such streets are subject to what is known as "urban servitudes," which in many respects are paramount to the right of the owner in fee of the contiguous lots. The state, in the exercise of its sovereignty, and the municipal corporation, have the power to authorize the appropriation of such streets to such uses "as are conducive to the public good, and do not interfere with their complete and unrestricted use as highways; and in doing so it is not obliged to confine itself to such uses as have already been permitted. As civilization advances, new uses may be found expedient." Ang. Highw. § 312; Thomp. Highw. c. 2, pp. 25–27. It is now the recognized rule in this state that railroads operated by steam are permissible upon such streets, "because such methods of transportation and travel are among those to which the street may be properly applied, as not being inconsistent with its free and unrestricted use." *Julia Building Ass'n* v. *Bell Tel. Co.*, 88 Mo. 271, and *loc. cit.* So deeply rooted is this doctrine in this jurisdiction that so eminent a jurist as Judge NORTON, in the case last cited, expressed a doubt as to whether or not, after the dedication of property for a street, by which the dedicator gives up his right to compensation for the uses included in the dedication, "he does not also give up his right to compensation for damages to adjacent property not taken, resulting from the application of the street to a use which by his dedication he authorized it to be put."

By the constitution of this state of 1875, art. 2, § 21, it is provided "that private property shall not be taken or damaged for public use

without just compensation." Under this provision, it has been held by the supreme court of the state that damages resulting from an important and radical change in the grade of the street may be recovered by an adjacent property owner. *Werth* v. *City of Springfield*, 78 Mo. 107; *Householder* v. *City of Kansas*, 83 Mo. 488. But this right in later cases is limited to the instance of "a sudden and extraordinary change of grade, and not from such improvements of the street, in any ordinary and reasonable mode deemed beneficial to the public good; for as to these the lot-owner must be assumed to have consented." *Julia Building Ass'n* v. *Bell Tel. Co.*, *supra*, approving the opinion of DICKEY, C. J., in *Rigney* v. *City of Chicago*, 102 Ill. 64, from which state the foregoing provision of the Missouri constitution was taken. The construction placed by the supreme court of Illinois in the case just cited upon said constitutional provision has further been approved by the supreme court of Missouri in *Rude* v. *City of St. Louis*, 93 Mo. 408–416, 6 S. W. Rep. 257, as follows:

"'In all cases, to warrant a recovery, it must appear that there has been some direct physical disturbance of a right, either public or private, which the plaintiff enjoys in connection with his property, and which gives to it an additional value, and that, by reason of such disturbance, he has sustained a special damage with respect to his property in excess of that sustained by the public generally.' This is further qualified by the statement that, 'in the absence of any statutory or constitutional provision on the subject, the common law affords redress in all such cases; and we have no doubt it was the intention of the framers of the present constitution to require compensation to be made in all cases where, but for some legislative enactment, an action would lie by the common law.'"

It therefore results from the foregoing principles that the plaintiff, as an adjacent property owner abutting on the street, is remitted to the common-law rule as the basis of his recovery; that he "must show, to entitle him to recover damages for obstruction to a highway, that the damages are peculiar to him, different in kind, and not merely in degree, from those suffered by other members of the community." 2 Dill. Mun. Corp. (3d Ed.) § 730. Accordingly, it was held in *Rude* v. *City of St. Louis*, *supra*, followed in *Fairchild* v. *City of St. Louis*, 97 Mo. 85, 11 S. W. Rep. 60, and *Canman* v. *City of St. Louis*, 97 Mo. 92, 11 S. W. Rep. 60, that the abutting lot-owner could not recover for consequential damages where the obstruction of the street did not lie immediately opposite to his property, and where the inconvenience and discomfort arising from the obstruction was alike common to the public and other property owners in the vicinity, although his injury may have differed in degree from that of others, but was not peculiar to him in kind.

The application of these principles to the facts of the case at bar makes it at once clear that the plaintiff has based his calculation for damages upon a false theory, in part, at least. Much of the evidence introduced by him for the ascertainment of his damages is not admissible. He claims, for instance, that a part of his assumed damages results from the loss of trade to his house or store, by an obstruction to Front street some

blocks to the west of his store-house, by the defendant erecting its depot station so as to obstruct much of the travel on said street, and by the crossing of defendant's road over this street still further west, which occasioned the opening of another street on the hill, some two blocks to the north of Front street, onto which much of the travel from Front street was diverted. Such damage is not peculiar to him,—different in kind from those suffered by other members of the community. The town authorities might have opened this street *sua sponte*, and by its superior condition have invited and drawn the whole travel over it instead of Front street, without the consent of plaintiff, and without any liability to him for such resultant injury. So if, by reason of the planting of this railroad track in Front street, with the attendant noise, discomfort, and alarm of its engines, parties coming to said town to trade should have gone on other streets with their teams and done their trading at other business houses, no cause of action would have been given therefor to the plaintiff. *Randle* v. *Railway Co.*, *supra*, and cases heretofore cited.

The wrongful acts specified in the petition, from which the damages claimed are alleged to flow, are the erecting of high embankments, changing the grade of the street, and digging ditches to a great depth and width; whereby said street, with its crossings, was so obstructed that it cannot be used by plaintiff for the benefit of his property. The matter of the embankment and the grade of the street will be considered together. It is true the grade of the railroad track in front of the plaintiff's property was higher than that of the street, but in no sense so high as to make an embankment obstructing the view of or access to plaintiff's property. At the time of the location of the railroad track there was in the street, a little west of the front of plaintiff's property, quite a depression, where a horse-rack had stood, occasioned, perhaps, by the tramping of horses; and as there was an accumulation of water, followed by mud, it is not apparent that filling it up would be objectionable to any one. It was filled by the railroad, and the grade of the street was raised until it was brought up within a few inches of the plane of the sidewalk in front of plaintiff's store. I quite concur with the testimony of several witnesses that this was rather an improvement of the street. It is inconceivable how any injury to plaintiff's property resulted from this change, making it conform more nearly to the grade of the railroad track.

With respect to the ditch, the evidence shows that, at the time defendant built its road-bed in said street, it dug a ditch or drain along its north side, about 3 feet wide and 18 or 20 inches deep, for the purpose of carrying off the water which came down from the bluff onto said street. The defendant contends that it was required to construct this ditch by section 810, Rev. St. 1879, which is as follows:

"It shall be the duty of every corporation, company, or person owning or operating any railroad or branch thereof in this state, and of any corporation, company, or person constructing any railroad in this state, within three months' after the completion of the same through any county in this state, to cause to

be constructed and maintained suitable ditches and drains along each side of the road-bed of such railroad to connect with ditches, drains, or water-courses, so as to afford sufficient outlet to drain and carry off the water along such railroad, whenever the draining of such water has been obstructed or rendered necessary by the construction of such railroad."

I question whether this provision of the statute is applicable to the instance of a railroad constructed along a street in a town or city. It could hardly be expected that a railroad company would erect high embankments in a street without special authority therefor; for ordinarily, and of right, a railroad should be required by the city authorities, in granting it the license to so use its street, to construct its road-bed on the established grade of the street, or, if they do not conform to the existing grade, they are usually required to reform the grade of the street to that of the railroad track; and, if by such change of grade damage should be occasioned to the adjacent property owner, the company would be liable therefor. My opinion is that said provision of the statute was intended by the legislature to apply only to such roads running through country districts, because it says, "constructing any railroad in any county of this state;" and in the clause immediately succeeding occurs the following:

"And, in case such corporation, company, or person shall fail or neglect to construct and maintain such ditches or drains within the time limited in this article, the county courts of the counties through which said railroad has been or may be located are hereby authorized and required, upon the petition of twenty land-owners of such county along the line of and contiguous to such railroad, to cause such ditches or drains to be constructed and maintained; and such court may maintain an action against such corporation," etc., "so failing to construct and maintain such ditches or drains, in any court of competent jurisdiction, in the name of such county, and shall be entitled to recover all costs, expenses, and damages incurred and accruing in the construction and maintenance of such ditches or drains."

It is not apparent that it could have been in the mind of the legislature to authorize the county court to have anything to do with the bringing of suits for the recovery of such damages, or overseeing any such matter, within the corporate limits of the municipality; for the latter is a body politic, invested with control and jurisdiction of its streets and internal government, with power to sue and be sued, etc. The ordinance passed by the city authorizing defendant to construct its road along said street contains no provision respecting such ditch or drain. Its construction, therefore, was the voluntary act of the defendant, and evidently was done for the purpose of protecting its own property, and not that of the public. It would therefore seem to follow that, if any special damage has resulted from its construction to the plaintiff, he is entitled to recover therefor. After the defendant constructed this ditch with a width of 3 feet and a depth of 18 or 20 inches, it did not so maintain it, but suffered it to widen and enlarge by the scoring or falling in of the sides, until its width was increased to 6 or 7 feet, and its depth also increased, caused by the flow of surface water through it. It was the duty of the town of Camden to·

have kept this street in repair in front of plaintiff's property, and for its neglect in that respect it was and is liable to any one sustaining damage therefrom. *Torpey* v. *City of Independence*, 24 Mo. App. 288.

It would not follow, however, that the liability of the city for permitting this nuisance would exempt the defendant from liability for its tort. The only damage, however, which the plaintiff can recover under the allegations of his petition, is such as flow directly from the digging of the ditch. The petition is not framed on the theory of defendant's neglect in suffering the enlargement of the ditch after the digging. *Benson* v. *Railroad Co.*, 78 Mo. 513; *Bird* v. *Railway Co.*, 30 Mo. App. 379. The ditch dug by defendant left between it and the sidewalk in front of plaintiff's property 19 feet, the sidewalk itself being 11 feet wide. The railroad track was 22 feet from said sidewalk. The special inconvenience and injury claimed by the plaintiff to his property, in consequence of the proximity of the ditch, is that it prevented him from the free and rightful use of his warehouse; that he could not drive a wagon up to this warehouse and back it to the platform, and unload goods and produce therefrom, as theretofore; that, owing to the narrowness of the street, a wagon could not turn around therein in front of his store, etc. This inconvenience becomes the more apparent when it is considered that there was no practicable outlet for wagons turning to the north or to the south across the railroad tracks to the west of this wareroom.

It is difficult to escape the conclusion, from the evidence, that the proximity of this ditch did interfere with plaintiff's privilege in this respect. The more difficult question which I have found to solve, in view of the evidence, is how to ascertain the measure of plaintiff's damage resulting from this obstruction; for the reason that plaintiff, by his evidence, has furnished the court little *data* by which to proceed in this estimation. The case was tried by plaintiff on the theory that the damages were to the freehold, tending to its permanent depreciation. This, however, is not the law as applied to the facts of this case. As the defendant had constructed this ditch without authority of law or any grant from the town, it was in the nature of a nuisance, which the town at any time could abate. It is therefore but permissive and temporary in its character, and as such it comes within the rule laid down by the supreme court of this state in *Smith* v. *Railroad Co.*, 98 Mo. 20, 11 S. W. Rep. 259, where it is held that the party injured can recover only for the diminution of the rental value of the property to the time of beginning his action. I conclude from the evidence before me that the market value of this property, independent of the existence of this railroad and track in said town, was not over $2,500 or $3,000. It was almost impossible for the witnesses to place anything like reliable market value thereon, for the reason that there did not seem to be any sale for such property in the town. Giving the plaintiff the largest margin possible under the evidence, the value of the fee to this property may be placed at $3,000. It would be a liberal estimate to place its rental at 10 per cent. of its valuation, which would be $300 per year. The more troublesome ques-

tion, then, arises, by what safe and reliable *data*, to avoid conjecture, is the court, under the evidence before it, to arrive at the diminution of this annual rental consequent upon the presence of this ditch? As this estimation is to be based solely upon the inconvenience of getting the goods and produce from a wagon into the warehouse or store-room, I think 15 per cent. on the rental value would be a liberal allowance, on the evidence before the court; which up to the time of the institution of suit would amount to $75, for which sum judgment will go for plaintiff.