EDMOND L. SIEMERS and ADELE W. PELLIGREEN, Appellants, v. ST. LOUIS ELECTRIC TERMINAL RAILWAY COMPANY, a Corporation.— 125 S. W. (2d) 865.

Division One, March 8, 1939.

*Bishop & Claiborne, Paul Dillon, Reardon & Lyng* and *J. B. Steiner* for appellants.

*Anderson, Gilbert, Wolfort, Allen & Bierman* for respondent.

1204

HAYS, P. J.—The appellants brought suit in the Circuit Court of the City of St. Louis to restrain the respondent from constructing and operating an underground railway in Twelfth Street upon which the property of appellants abutted. By stipulation of the parties, made a rule of court (of date November 2, 1931) in the division in which the suit was pending, whereby the cause was transformed into a statutory arbitration pursuant to said rule of court, and to be governed by the laws of eminent domain applying to condemnation proceedings by corporations.

The case took the course usual in such proceedings. After the overruling of their exceptions filed to report of commissioners, and after an adverse verdict by the jury and judgment entered thereon, (June 22, 1932) plaintiffs' appeal followed and was lodged in this court in due course. But by some mishap the files of the court below were lost or mislaid, with the result that until recently, and until they were found, the case, unavoidably, lay here dormant.

The appellants' property is located at the southwest corner of the intersection of Franklin Avenue and Twelfth Street, with a frontage of thirty-two feet on Franklin Avenue and seventy-five feet on Twelfth Street. The parcel was improved with a three-story brick building with basement. The basement extended as an areaway under and of the width of the sidewalk on Franklin. Under the sidewalk there was a door-covered stairway entering into said areaway. The first floor was occupied by a tenant who used the basement in his business. The second and third floors were rented and occupied as

living quarters. The front and only entrance to the first floor was on Franklin Avenue.

On September 23, 1930, a permit (known as Permit No. 5514) was issued by the city's Board of Public Service to respondent and in writing accepted by the latter to construct a subway and install an underground railway in Twelfth Street north of Morgan and alongside appellants' property, as shown in detailed plans referred to as having theretofore been approved by said board.

The work in question and its alleged results affecting appellants' property may be outlined as follows:

A trench was excavated in Twelfth Street and in Franklin Avenue alongside appellants' property. The trench was from seventy-five to 100 feet wide at the top—flush with the building line in Twelfth Street—and forty to forty-five feet deep, the sides tapering so that the trench was some thirty-five or forty feet wide at the bottom, on which the rails were laid.

There was evidence tending to show the following elements of damage caused thereby: Long-continued deprivation by barricades or by watchman of temporary access to the building; permanent deprivation of use of the areaway; sewer disconnection; lowering of surface grade of the street thirteen inches below first floor level; loss of support so impaired so that the erection of a "heavier" building is not feasible save at great expense for deepening the foundation. (The building was obsolescent and has since been razed.)

The question of the propriety of respondent's given instructions numbered 2 and 3, is the determinative issue before us into which the other issues converge. This requires a brief analysis of these instructions along with appellants' given Instruction No. 1.

The last mentioned (so far as applicable to the elements of damage referred to above) directed the jury to consider damage, if any: to loss of rents resulting from deprivation of ingress and egress; for severance of sewer connections; for increased outlay for foundation for a heavier building and directed the deduction from any such damages found such special benefits to the property as might be found.

Respondent's Instruction No. 2 hypothesized (a) that the city had authority to use for street purposes all of Franklin Avenue and Twelfth Street; (b) had the right to construct the roadway and sidewalk as it saw fit, and authorize the defendant to construct the same according to plans approved by the Board of Public Service; (c) the plaintiffs had no claim for damages for loss of use of the areaway. Instruction No. 3 told the jury "that plaintiffs cannot recover for any damages on account of interference of access to the property necessarily occasioned by construction in accordance with said approved plans."

Analyzing respondent's instructions:—No. 2, in its entirety, is a special demurrer to the evidence, correct only in its directing that

the plaintiffs cannot recover on account of loss of the use of the areaway.

The rule as regards the areaway is this: The owner of an abutting building has no *absolute* right to use the street for an areaway, but only the right subject to the public easement. [44 C. J., p. 949; Julia Building Assn. v. Bell Telephone Co., 88 Mo. 258; Gordon v. Peltzer, 56 Mo. App. 599, 604; Realty Power Co. v. St. Louis, 282 Mo. 180, 193, 221 S. W. 51.] City ordinances provide for the granting of a permit to construct vaults under sidewalks, subject to regulations set out in the ordinances. The right of use, therefore, was a mere license.

The same erroneous theory as in No. 2 is hypothesized in Instruction No. 3, which eliminated from the case temporary deprivation of access, loss of rents and other elements of damage. All in all, appellants' instruction supra was nullified as to every form of damage but that resulting from sewer disconnection.

Counsel for respondent take the position that Instruction No. 3 was predicated and justified on the theory that, as it was not shown in the evidence that the work in question was not necessary, nor negligently performed, the interference thereof with the building or property abutting the streets was *damnum absque injuria,* because done in the exercise of the city's governmental power, by respondent, under the city's delegation thereof for a public use.

Among other authorities construing that constitutional provision and involving the exercise by a city of governmental function, the respondent cites Van DeVere v. Kansas City, 107 Mo. 83, 17 S. W. 695. There the city set about to establish a fire-engine house in a residential district, whereupon an owner of a building lot in the vicinity of the city's plot sought, unsuccessfully, to enjoin. This court affirmed the decree. That case became and has continued to be a leading authority upon the construction of the "or damaged" feature of the constitutional provision relating to the taking or damaging of private property for public use. In that case (l. c. 91) it was said:—

"The amendment must be construed and applied in view of the evils which it was designed to remedy. We have seen that before this amendment there were many cases where the *corpus* of the property was not taken, yet rights directly annexed to the property were injured, and that for such consequential damages the property owner had no remedy, because the act was authorized by law. Whether the plaintiff must now, in all cases when claiming that his property has been 'damaged' for public use, show that the injury is one for which he might have maintained an action if the act had not been done by authority of law, we need not say in this case. What we do say is this, that he must show *that the property itself, or some right or easement connected therewith, is directly affected and that it is specially affected.*" (Italics ours.)

After that enunciation, and after pointing out that "acts done in the proper exercise of governmental power (as exercised by the city in the work there involved—the establishment of a fire-engine house on land in the vicinity of but not adjacent to the objector's)" the court definitely pointed out that objector's claim was defective in that he would not, by the questioned work, be "deprived" of any access to the street or *any other incorporeal right attached to his property* and (1. c. 88) instanced that:—

"Thus far we have held that the amendment *does* (our italics) extend to those cases where property is damaged by reason of a change in the grade of a street on which the property abuts, and this, too, though the city had the charter power [which is governmental and is to be exercised through an ordinance (Ely v. St. Louis, 181 Mo. 723, 81 S. W. 168)] to change the grade. [Householder v. City of Kansas, 83 Mo. 488; Sheehy v. Railroad, 94 Mo. 574.]"

The Householder case held also that said constitutional provision is self-enforcing. Such holdings in that case have been followed up to the present time. (Most recent cases, State ex rel. City of St. Louis v. O'Malley, 343 Mo. 658, 122 S. W. (2d) 940; Tremayne v. St. Louis, 320 Mo. 120, 1. c. 133, 6 S. W. (2d) 935.)

In the case of Peters v. Buckner (banc), 288 Mo. 618, 232 S. W. 1024, involving an exercise of a governmental function by a quasi-public corporation, the school district of Kansas City, in an effort by a proceeding in eminent domain, undertook to condemn for a school house certain lots contained in a dedicated subdivision of the city. Each lot was impressed with a negative easement contained in each title deed prohibiting the erection of any building other than a residence. This court held the restrictions created mutual easements among the lot owners in their respective properties, and that such easement "is property, is valuable and cannot be taken for a public use without the payment of a just compensation." The ruling in the majority opinion was based upon the authority of the Van De Vere case.

In the light of the authorities supra we are satisfied that the doctrine of governmental immunity does not apply in the instant case. In those decisions it was not treated as an influencing factor.

We shall now consider the several elements of damage claimed and the law applicable thereto. We think the authorities sustain the proposition that continued, though temporary, deprivation of access to the building, resulting in loss of rents or use, which there was evidence tending to show, is an element of damage properly for consideration. The right to the use of one's property abutting on a street is an easement which cannot be taken away or impaired without just compensation. [Bourg v. Manufacturers' Ry. Co. (Mo.), 245 S. W. 43; Knapp-Stout & Co. v. St. Louis Transfer Co., 126 Mo. 26, 28 S. W. 627; Chicago, R. I. & Pac. Ry. Co. v. Prigmore (Okla.),

68 Pac. 90.] Cost and expense of restoration of sewer connection would seem to come within the same category.

It has been said that for the lowering of the grade of the street the law is imperative that the abutting owner receive a just compensation for the damage sustained by his property. But the respondent asserts that the change of grade was a matter incidental to a street-widening project provided for by the city back in 1921. The printed record gives us no enlightenment on that matter. However, the records of this court (of which we take judicial notice) make a disclosure that is pertinent. It appears from the case of State ex rel. St. Louis v. Beck, 333 Mo. 1118, 63 S. W. (2d) 814, that back in 1920, the city, pursuant to ordinance passed, brought a condemnation suit wherein the city sought to condemn various tracts of land for the widening of Twelfth Street and that the suit has never come to final judgment. Whether or not these appellants were parties to that proceeding does not appear. So, we think, the present proceeding must rest upon its own foundation alone.

Next for consideration is the question of damage for impairment of the appellants' right to lateral support, and to compensation, for its impairment for public use. Does not the impairment constitute as "direct" an injury as does a change of surface grade of a street, and as "special" as that, and does it not "affect a right or easement connected with the abutter's property," as in the Van De Vere case; or the intangible right that was dealt with in the Peters v. Buckner case; or the right to air, light and access—a right denominated "property of which the abutter cannot be deprived without just compensation"—as held in DeGeofroy v. Merchants Bridge Terminal Ry. Co., 179 Mo. 698, 79 S. W. 386, in dealing with an elevated street railway? We are unable to perceive any difference as regards principle.

The view that impairment of lateral support afforded by the street to an abutting owner's property and buildings thereon is a compensable injury, has wide though divided support. Numerous cases may be found collated in American Jurisprudence and connected system and in Corpus Juris Secundum. A few illustrative cases will presently be noted.

Meanwhile we consider respondent's assertion that the rule in this State is that an adjacent owner is not bound to support a building, but only the land in its natural condition. It is true that this, the common law rule, obtains in this State as between co-terminus proprietors (Charles v. Rankin, 22 Mo. 566). Respondent relies on that rule and cites McGrath v. St. Louis, 215 Mo. 191, 114 S. W. 611. In the latter case an independent contractor undertook to grade and pave an alley. In making the excavation he, unnecessarily, went beyond the property line and partly under the foundation wall of the abutting property owner's building. The property owner sued

as for negligence. He prevailed as against the independent contractor, but not as against the city; on appeal the judgment was affirmed. We think the case is not relevant.

In re Rapid Transit Railroad Comrs., 197 N. Y. 81, 36 L. R. A. (N. S.) 647, 90 N. E. 456, 18 Ann. Cas. 366, held that an abutting owner is entitled to lateral support or compensation for its destruction, as against a municipality which is constructing a subway. This is the rule regardless of who is the owner of the fee of the street (Susswein v. Bradley Contracting Co., 184 App. Div. 852, 172 N. Y. Supp. 622, 625). And a city, on taking the land or the easement of an abutting owner for the purpose of constructing a subway under the street, must compensate him for the cost of deeper and stronger foundations to his buildings necessitated by reason of the loss of lateral support (Brooklyn Trust Co. v. New York, 109 Misc. 593, 179 N. Y. Supp. 441, l. c. 445).

Certainly the respondent in its corporate capacity merely, and under its charter, had no power to establish and maintain an underground railway in Twelfth Street. The power resides in legislative grant exclusively. The Legislature has by statute delegated to the cities of the State this power to grant a franchise to a railroad corporation giving it the right to construct and maintain in a city's streets an underground railroad, but under stated conditions (R. S. 1929, sec. 7156). After complying with the conditions and receiving a franchise, and before taking or damaging any property in the construction of the road, the company shall go through a process, as framed by Section 7157, to ascertain and shall pay damages to the owners of the real and personal property that will be affected by the construction and operation of the railroad. Section 7158 defines the damages "to be the depreciation in the value of the property that may result from the construction and operation" of the road.

Not only is that statutory method the exclusive method, but if those statutes be given the interpretation their plain language imports, it is apparent that a proper application of them would logically include within their purview damages for impairment of lateral support of a street to an abutter's property and the improvements thereon. Otherwise, why the inclusion—stated in broadest terms—in the requirement of payment, of the language "shall pay to the owner or owners of the *real* and *personal property* so affected?" Though we think the statute gives rights additional to those recognized by the common law, the present case does not require nor does space permit present elaboration of that subject.

From what has been said above, it is manifest that there was no legal relationship between the respondent and the appellants with respect to them or their property rights, or to the work of construction. With respect to the appellants, it is clear that respondent was a trespasser.

It has been seen that the giving of respondent's instructions constitutes reversible error. We observe that appellants' instruction is not free from faults. One is that it omitted to predicate any measure of damages.

Appellants' complaint that the evidence touching the matter of special benefits was put at large, even permitted to include as elements the widening and re-surfacing of Twelfth Street and re-surfacing Franklin (if it was), is well taken. The construction and maintenance of the underground railway was for the restricted purpose of transportation in that mode. If by reason of the placement and maintenance of said railway alongside appellants' property the latter was enhanced in market value, or was afforded access to said railroad and its facilities for transportation over the same *not* inuring or afforded to other lands generally in the same neighborhood, then special or peculiar benefits inured to appellants' property; otherwise they did not. [State ex rel. State Highway Comm. v. Duncan, 323 Mo. 329, 19 S. W. (2d) 456; State ex rel. State Highway Comm. v. Jones, 321 Mo. 1154, 15 S. W. (2d) 338.]

Other errors assigned are unimportant and will not likely again occur, so they may be remitted here.

The judgment is reversed and the cause is remanded. All concur.