Fuld, J.
Claiming that their right of access to their gasoline station has been unlawfully invaded and that such invasion constitutes a taking of property without due process of law, Cities Service Oil Company and Frank Bronchick, the owner and lessee, respectively, of the premises, seek injunctive relief and damages — an injunction to restrain the City of New York and the New York City Transit Authority from maintaining bus stops on the two streets upon which their property abuts, damages for losses assertedly caused by the interference with their business. The court at Special Term dismissed the com *114 plaint and the Appellate Division unanimously affirmed the resulting judgment. The appeal is taken to this court as of right on asserted constitutional grounds.
The plaintiffs’ gasoline station is located in Brooklyn, at the northwest corner of the intersection formed by two busy thoroughfares, Flatbush Avenue and Kings Highway. On each side of the property fronting these streets, there are a pair of curb cuts installed and maintained pursuant to permits issued by the city (Administrative Code of City of New York, § C26-228.0); the cuts are each 30 feet long, almost 40 feet apart on Flatbush Avenue and about 55 feet apart on Kings Highway. City-owned buses, running south on Flatbush Avenue and west on Kings Highway, stop to discharge and take on passengers directly in front of the plaintiffs’ premises. The bus stop on Kings Highway was established more than 25 years ago, while that on Flatbush Avenue was established in 1951, when bus service was substituted for streetcar service.
The traffic light at the intersection is operated alternately on both sides on a 60-second cycle. On Flatbush Avenue, where, the plaintiffs allege, the interference with ingress and egress is greatest, most of the morning traffic is northbound so that there are at that time very few passengers embarking and alighting at the bus stop in front of the plaintiffs’ station. However, because of the short headway between the buses — 80 seconds during the morning rush hours and two minutes during the afternoon and evening rush hours—when the light is red to southbound traffic, two southbound buses may be standing in front of the plaintiffs’ premises at the same time.
According to the City Commissioner of Traffic, to whom is delegated the power of establishing bus stops (see New York City Charter, § 1063), the two stops here in question were selected ‘ ‘ to provide for the transfer of passengers between the two intersecting bus lines without requiring” passengers to traverse either of the two busy crossings. He had given careful-study to the problem, testified the commissioner, and, based on considerations of “ public safety,” “ movement of traffic ” and “ access to property”, it was his conclusion that the location of the two stops where they are is ‘ ‘ the most practical and feasible location that can be devised ”. To the suggestion that the Flatbush Avenue stop be moved from where it is, on the *115 northwest corner, to the opposite corner, the southwest one — near a bank which had no objection to a bus stop—the commissioner stated that such a shift would not only reduce the number of available parking spaces, but would result in the highly undesirable traffic pattern of two bus stops directly across from each other on Flatbush Avenue.
It is the plaintiffs’ contention that their right of ingress and egress is a “ paramount ” property right and that the maintenance of the bus stops constitutes an unreasonable interference with that right. On the contrary, it is the right of the public to the use of the streets which is “ absolute and paramount ”. (Deshong v. City of New York, 176 N. Y. 475, 483-484; see, also, Jones Beach Blvd. Estate v. Moses, 268 N. Y. 362, 368; Sauer v. City of New York, 180 N. Y. 27, 31, affd. 206 U. S. 536.) To promote and facilitate travel on street and highway, a municipality may, therefore, in the exercise of an unquestioned governmental function, regulate and control traffic and public transportation. Unless arbitrary and capricious, such an act ‘ ‘ will not be restrained nor will the courts assume the management and control of [the] highways ” (Perlmutter v. Greene, 259 N. Y. 327, 334), for, as Special Referee SrEiuBEmK aptly remarked at Special Term, any judicial interference with the expert judgment of those deputed to regulate traffic is likely to cause “confusion and disorder” in the administration of the traffic laws and result in “ great inconvenience ” to the public.
In view, then, of the community interest and concern in safe and unimpeded public travel, it follows, as we have already had occasion to write, that “ The rights of an abutter are subject to the right of [a city] to regulate and control the public highways for the benefit of the traveling public. [Cases cited.] Although the abutting owner may be inconvenienced by a regulation, if it is reasonably adapted to benefit the traveling public, he has no remedy unless given one by some express statute.” (Jones Beach Blvd. Estate v. Moses, supra, 268 N. Y. 362, 368.) A municipality may not, without paying just compensation, maintain an obstruction which bars an owner from access to his property (cf. Waldorf-Astoria Hotel Co. v. City of New York, 212 N. Y. 97, 103), but a regulation causing only minor and intermittent interference will not be stricken as invalid. In the Jones Beach case, for instance, where the regulation was *116 upheld, the plaintiff’s predecessor had sold a strip of land to the Long Island State Park Commission for use as a parkway connecting Jones Beach with Merrick Road, reserving land for driveways to permit him access to the proposed parkway. After the parkway had been built, the commission so limited the use of left turns and u-turns that one entering the parkway from the plaintiff’s property and desiring to travel northward was compelled to drive in the opposite, southerly, direction for five miles, until he reached Jones Beach, before he could turn to travel the way he wished to go. The burden placed on the plaintiff in that ■ case was far more onerous than the inconvenience to which Cities Service and Bronchick are here subjected.
Not without relevance in this connection are the street railway cases in which abutting owners sought to enjoin the construction of streetcar lines as an interference with ‘ ‘ light, air and access ”. (See Kane v. New York El. R. R. Co., 125 N. Y. 164, 176; Fobes v. Rome, Watertown & Ogdensburg R. R. Co., 121 N. Y. 505.) The Kane case involved an elevated railroad, as to which different rules applied, but the court, addressing itself to street railways, declared that the use of a city street for a railway, “ unless it practically closes the street, is a street use which may be permitted ” and abutting owners “ have no legal redress * * * although [the use] interferes with the enjoyment of their premises or seriously impairs their value ” (125 N. Y., at p. 176).
The regulation placing the bus stops in front of the plaintiffs’ premises was fully warranted to assure not alone the safety of the traveling public, but the orderly movement of pedestrian and vehicular traffic. Moreover, as found below, what interference of access there may have been, is “ slight indeed,” and it is enough to observe that the record amply supports that conclusion — establishing as it does that, even when two buses pulled to a stop on Flatbush Avenue at the same time and in back of each other, they remained but for “ a few seconds ” and that even during that period motor vehicles were able to enter the gasoline station by way of the northernmost curb cut.
It is self-evident, from what we have already said, that there is no basis for the plaintiffs’ claim that their property has been taken without due process of law. (See, e.g., Sauer v. City of *117 New York, supra, 180 N. Y. 27, 32-33, affd. 206 U. S. 536; Matter of City of New York [Brooklyn-Queens Highway], 300 N. Y. 265, 268-269; 2 Cooley, Constitutional Limitations [8th ed., 1927], p. 1149 et seq.; “ The Constitution of the United States, Analysis and Interpretation ”, Legis. Reference Service Library of Congress, Edward S. Corwin, editor [1953, U. S. Senate Doc. No. 170, 82d Cong., 2d Sess.], pp. 1067-1068.) In the Sauer case (supra, 180 N. Y. 27, affd. 206 U. S. 536), for instance, the court, after pointing out that ‘1 private property shall not be taken for public use without just compensation ”, went on to state (180 N. Y., at pp. 32-33):
‘ ‘ But acts done in the proper exercise of governmental powers, and not directly encroaching upon private property, though their consequences may impair its use, are universally held not to be a taking within the meaning of the constitutional provision. They do not entitle the owner of such property to compensation * * * or give him any right of action.”
The establishment of bus stops is indisputably performed in the proper exercise of governmental powers and may neither be regarded as a “taking” nor serve as a predicate for a cause of action. Any loss resulting from the interference with an abutting owner’s enjoyment of his property is damnum absque injuria and the owner must bear it. Traffic regulations, promulgated as they are to promote the safety and welfare of the traveling public, may not infrequently entail hardships and difficulties for some individual property owners. But that will furnish no ground for invalidating the regulation, for we deem it fundamental that, in this area of governmental action, what is best for the body politic in the long run must prevail over the interests of particular parties. (See, e.g., Shepard v. Village of Skaneateles, 300 N. Y. 115, 118.) The interference here complained of must be shouldered by the plaintiffs as one of the inconveniences to be borne by the individual for the larger benefit of the community and the public in general.
The judgment of the Appellate Division should be affirmed, without costs.
Chief Judge Conway and Judges Desmond, Dye, Froessee, Van Voorhis and Burke concur.
Judgment affirmed.