**Rose Brenner FILGER and Ferd Filger, Appellants,**

v.

**STATE HIGHWAY COMMISSION of Missouri, Respondent.**

**No. 23481.**

Kansas City Court of Appeals.
Missouri.

Feb. 5, 1962.

Williams, Norton & Pollard, North Kansas City, John Yeaman, Platte City, for appellants.

Robert L. Hyder, Melvin Englehart, Jefferson City, for respondent.

MAUGHMER, Commissioner.

This is a suit for damages by the owners of a tract of land used for business purposes and abutting a part of the northwest quadrant at the intersection of Highways 71 and 69, in Riverside, Platte County, Missouri. The petition alleges that the defendant State Highway Commission of Missouri in 1958, changed the existing construction of this intersection so as to "practically completely block" access and almost completely curtail ingress and egress to this business property, thereby damaging the value of plaintiffs' tract. There was a jury verdict in favor of plaintiffs for $7,-000. The trial court set aside this verdict, sustained defendant's after trial motion for directed verdict or in the alternative for a new trial, and entered judgment for defendant. Plaintiffs have appealed.

Plaintiffs have owned the real estate involved continuously since 1916. In 1934, defendant acquired the right-of-way and shortly thereafter constructed Highway 71, which generally runs north and south along the east side of plaintiffs' property. A short time later defendant acquired the right-of-way for and constructed Highway 69, which runs east and west, south of but not abutting plaintiffs' property. Originally these roads were gravel, then black top, and finally became concrete highways. The right-of-way as secured in 1934, and touching plaintiffs' tract on the east was wider on the south side as it neared the highway junction than it was on the north part. The result was that plaintiffs' jointure with the right-of-way ran from their northeast corner almost due south for a distance of 47.45 feet and then in a southwesterly direction a distance of 116.20 feet to plaintiffs' southeast corner. In September, 1954, plaintiffs erected a building on their tract in which ever since a restaurant or roadside eating establishment has been operated under the trade name "Rocket Drive-Inn". Plaintiffs never did personally operate this business but rather in September, 1954, leased it for 10 years at a rental of $350 per month. This lease contained a proviso that if the highway was changed, altered or closed so as to materially reduce the flow of traffic, lessees could cancel. Lessees have not canceled, but rather have paid the rent continuously since 1954.

It is plaintiffs' contention that "about September 1, 1958, * * * defendants came upon their right-of-way and proceeded to construct concrete barriers and islands on the right-of-way in such manner as to practically completely block plaintiffs and their invitees from access to plaintiffs' property; ingress and egress to and from plaintiffs' property was almost completely curtailed, it being physically impossible for a motor vehicle to go directly to and from plaintiffs' property and the intersection or highway and thus plaintiffs have been denied their easement of access", all to plaintiffs' damage in diminution of both the rental and sale value of their property.

The evidence shows and it is certain the amount of traffic over this intersection has increased tremendously since the right-of-way was acquired and the highways were first built about 1934. This increase in vehicular traffic has been continuous and has corresponded to a large extent with the population growth and with the industrial and residential expansion in the area. From time to time during the last 27 years the highway department has altered, enlarged and improved the highways at this intersection in order to more efficiently carry this additional and ever increasing traffic.

As previously pointed out the original construction was gravel, then black top and

finally concrete. At first the intersection was merely a simple crossing of two highways and then blinker lights were installed. Later each of the four concrete roadways which entered the intersection were widened back from the crossing a distance of some 400 feet so as to accommodate four lane traffic. The vehicles going straight ahead or to the right kept in the right lane and were thus not delayed by the left-turning vehicles which were to occupy the inner right lane and in most instances were required to wait for an opportunity to turn left.

Apparently the traffic crossing this intersection continued to increase and the accident rate mounted. In any event, the Highway Commission in September, 1958, determined to and did make a further change at or near this intersection which was designed to channel off some of the traffic that would otherwise cross the intersection proper. The traffic control island, which gives rise to plaintiffs' complaint, was constructed on defendant's right-of-way in the northwest quadrant of the intersection of Highways 71 and 69; and in addition, a driveway 30 feet in width was constructed running from the west boundary of Highway 71 in a southwesterly direction along the west side of the island to the north boundary line of Highway 69. Similar islands and driveways were built on each of the other quadrants, thereby enabling vehicles approaching the intersection from north, south, east or west to turn right without entering the intersection itself. The northwest island is 225 feet long on its west side with its north end approximately 115 feet north of plaintiffs' south property line. Prior to this construction it was possible to drive a motor vehicle generally east from any part of plaintiffs' entire 163 foot frontage onto the right-of-way and directly across it to Highway 71. After this construction it was possible to drive a car east and directly onto Highway 71 from only the north 47.55 feet of plaintiffs' frontage. Going east from the south 115 feet of plaintiffs' frontage would put the vehicle on the 30 foot "short-cut" roadway leading to Highway 69.

It appears from the evidence and physical facts that while before 1958, plaintiffs had 163 feet of direct access to Highway 71, they now have 48 feet of direct access, and 125 feet of access to the short-cut. Ingress and egress to Highway 71 has not been eliminated, and has not even been lessened in so far as the highway system itself is concerned. Northbound traffic on Highway 71 has less distance in which to turn left to plaintiffs' property than it had before. There was substantial credible evidence offered tending to show that these 1958 changes caused the plaintiffs' property to have less value for both sale and rental immediately after than immediately before such changes. However, the allegations of the petition that access was "practically completely blocked" and ingress and egress was "almost completely curtailed" were not proved nor are they apparent from the physical facts.

Simply stated, the question before us and which was before the trial court on motion to dismiss is this: Have plaintiffs made a prima facie case entitling them to go to the jury on a showing that (1) the Highway Commission modified the intersection construction, utilizing only previously acquired right-of-way by building a traffic island; (2) such modification, although decreasing the amount of plaintiffs' direct access to the main highway did not decrease the amount of plaintiffs' direct access to the highway system; (3) such modification made it more difficult and inconvenient for northbound traffic to turn left onto plaintiffs' business property and likewise to exit therefrom, and (4) such modification resulted in plaintiffs' business property becoming less valuable immediately thereafter than it was immediately before?

In 1934, the Highway Commission obtained this right-of-way to be used for sert, retained their right of access but the highway purposes. Plaintiffs, as they as-Commission did not agree or contract to

maintain forever a highway as originally constructed. In fact changes were made every few years. The surface was improved and finally made of concrete. It became a segment of a highway system which attracted motor vehicle traffic for hundreds of miles and became a busy thoroughfare. One result was to make the adjacent lots or tracts of land valuable for business purposes. This was a resultant benefit common to all abutting landowners. Traffic, great or small, is merely an incident of streets and highways and cannot be considered either as an element of damages or benefits. It was 20 years after the original construction before plaintiffs first utilized their tract for business purposes by constructing a building thereon.

Nichols, Eminent Domain, 3rd Ed., Sec. 6.445, pp. 409–411, makes these comments:

"An individual proprietor has no right to insist that the entire volume of traffic that would naturally flow over a highway of which he owns the fee pass undiverted and unobstructed. In fact, while under some circumstances and conditions he has a right of access to and from his own premises, he has no constitutional right to have anyone pass by his premises at all.

*    *    *    *    *    *

"It appears to be held that the erection of a permanent structure in a public highway of such a character as to rank as a proper highway use, even if it diminishes the value of abutting property, is not in and of itself a damage in the constitutional sense. In other words, the abutting owner has no private right that the street shall not be used for legitimate street purposes, however obnoxious to him they may be, and the use of the street for such purposes violates no private rights and is consequently not a special and peculiar damage. The injury which the owner suffers from the presence of an obnoxious structure in the street is the same in kind as that suffered by the public generally, though greater in degree".

The trial court in its memorandum opinion referred to Henry Gauss & Sons Mfg. Co. v. St. Louis K. & N. W. Ry. Co., 113 Mo. 308, 20 S.W. 658, 659, 18 L.R.A. 339, where the statement of Judge Norton in Julia Bldg. Ass'n v. Bell Tel. Co., 88 Mo. 258, 273 was restated and approved. Judge Norton there said:

"I think it may be safely affirmed that all the authorities to which we have been cited by counsel on both sides of this case agree that when the public acquires a street, either by condemnation, grant, or dedication, it may be applied to all uses consistent with, and not subversive of, the proper uses of a street, and not inconsistent with the uses contemplated in the dedication, grant, or condemnation; and that it is only when the street is subjected to a new servitude, inconsistent with and subversive of its use as a street, that the abutting owner can complain".

The Supreme Court of Indiana (State of Indiana v. Ensley et al., 240 Ind. 472, 164 N.E.2d 342) held that where the effect of a divider strip in a new highway was to prevent northbound traffic from turning directly into owners' property, and such traffic was now compelled to continue to the intersection of the highway and street where it was required to make a left turn and travel approximately one-half block to the entrance of the owners' property, such did not constitute a compensable taking of private property entitling the owners to compensation.

In Wilson et ux. v. Iowa State Highway Commission, 249 Iowa 994, 90 N.W.2d 161, 168, the Supreme Court of Iowa stated that a property owner is not entitled to unlimited access to abutting property at all points along the highway.

In Cities Service Oil Co. et al. v. City of New York et al., 5 N.Y.2d 110, 180 N.Y.S.2d 769, 154 N.E.2d 814, 817, the

city established bus stops in front of plaintiff's gasoline station. The court said: "Traffic regulations, promulgated as they are to promote the safety and welfare of the traveling public, may not infrequently entail hardships and difficulties for some individual property owners. But that will furnish no ground for invalidating the regulation, for we deem it fundamental that, in this area of governmental action, what is best for the body politic in the long run must prevail over the interests of particular parties".

The Court of Appeals of New York in Jones Beach Boulevard Estate, Inc. v. Moses et al., 268 N.Y. 362, 197 N.E. 313, 100 A.L.R. 487, ruled that an ordinance prohibiting left turns in front of plaintiff's premises was neither invalid nor an infringement of rights of the abutting owner.

In Iowa State Highway Commission v. Smith et al., 248 Iowa 869, 82 N.W.2d 755, 73 A.L.R.2d 680, the Supreme Court of Iowa held that while realty consists not alone of the tangible thing, but also of rights such as right to access, nevertheless, two 34 foot wide driveways connecting filling station with the highway were all that were necessary and that prohibition of left turns and U turns except at designated points did not constitute a taking of the adjoining landowner's property.

In The State of Washington v. Fox et al., 53 Wash.2d 216, 332 P.2d 943, 946, the Supreme Court of Washington adopted with approval this language from Walker v. State, 48 Wash.2d 587, 295 P.2d 328:

"We have found no authority, nor has any been called to our attention, which allows, to the abutting property owner, damages allegedly arising from statutes or ordinances (a) establishing one-way streets; (b) forbidding 'U' and left turns; or (c) authorizing the use of other suitable traffic-control devices deemed necessary by the proper authorities to warn, regulate, and guide traffic upon public thoroughfares.

"Although an abutting property owner may be inconvenienced by one-way traffic regulations immediately in front of his property, he has no remedy if such regulations be reasonably adapted to the benefit of the traveling public".

In Pennysavers Oil Co. of Texas v. State of Texas, Tex.Civ.App., 334 S.W.2d 546, the state had built a new "access controlled highway" and the former highway to which plaintiff's filling station operator had enjoyed complete access was converted into a mere server road. The Court said (548–549):

"The State has the right under the provisions of Art. 6674w, supra, and its police power, to provide for one-way traffic, no U turns, division barriers, no left or right turns, traffic lanes, speeding and parking regulations, circuitous routes; for the changing of highways generally, and is not responsible for loss of trade to abutting landowners as a result of the exercise of this police power, so long as it does not amount to a complete taking of the right of access".

To the same effect is the holding by the Supreme Court of Arkansas in Arkansas State Highway Commission v. Bingham et al., 231 Ark. 934, 333 S.W.2d 728, stating that the right of ingress and egress is a property right which is compensable, but where condemnee's remaining land was on access road there was no taking of such property right, even though access road's nearest connection with limited access highway was somewhat more than a mile from condemnee's filling station, and that loss occasioned by such diversion of traffic was not compensable. This Court (Christy et al. v. Chicago, B. & Q. R. Co., 240 Mo.App. 632, 212 S.W.2d 476, 479) said: " * * * when access to property is cut off in one direction by the vacation or closing of a street upon which it abuts but may be had in the other direction, the property is not taken or damaged. It does not suffer damage different in kind from

that suffered by the general public although injury to the property may be greater. (citing cases)".

The trial court found, we find and the evidence is quite clear that while the changes made, make ingress and egress to and from plaintiffs' business property more inconvenient, especially for motorists traveling north on Highway 71, nevertheless, plaintiffs have direct access to Highway 71 from 47½ feet of their frontage and direct access to the highway system from their remaining 115 feet of frontage. We believe the reasoning of Mr. Justice Holmes in Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322, is applicable. Justice Holmes said this:

"Government hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law. As long recognized some values are enjoyed under an implied limitation and must yield to the police power. But obviously the implied limitation must have its limits or the contract and due process clauses are gone. One fact for consideration in determining such limits is the extent of the diminution".

The value, for both sale and rental of plaintiffs' property abutting Highway 71 has varied since the highway was built in 1934, to some extent with the improvements or changes in Highway 71 and the intersection. It increased with the enlargement and improvement of the highway and as the traffic increased. Plaintiffs in common with other owners in the area reaped benefits and saw their real estate appreciate in value. Now an even further expansion in traffic flow has necessitated widening of the highway at the intersection. This change may result in some inconvenience respecting ingress and egress to plaintiffs' tract. It may have resulted in some lessening of its value but nevertheless free and full access to the highway system remains. Highway improvement would stall and become tied up in a web of controversy if every construction change such as widening a highway to four lanes, prohibiting left turns, installing safety and traffic islands and diminution of unlimited access gave rise to an enforceable claim for damages. Plaintiffs have benefited by some of the changes. They must stand the loss occasioned by the public improvement so long as their access rights are not materially altered or destroyed.

The trial court found specifically that the changes here did not result in (a) a practically complete blocking of access or (b) an almost complete curtailment of ingress and egress so as to make it (c) physically impossible for a vehicle to travel directly from the highway to plaintiffs' property and return to the highway. We concur in such conclusions. The plaintiff Mrs. Filger testified in accordance therewith although asserting the changes made it more inconvenient.

In this case there was no direct taking of any part of plaintiffs' tangible property. The Commission utilized only the right-of-way it had secured in 1934 for highway purpose use. None of plaintiffs' east frontage access to the highway system itself was destroyed, but only the direct access to Highway 71 itself was reduced from 163 feet to 47½ feet. That such access was not materially blocked or seriously curtailed so as to make physical vehicular entrance and exit almost impossible is further evidenced by the fact that plaintiffs' lessees after the 1958 changes did not avail themselves of the lease privilege of cancellation, but instead have continued to use the tract and building as a roadside eating place and have continued to pay $350 per month rent therefor.

Our Missouri Constitution, Art. I, Sec. 26, V.A.M.S., provides that compensation must be paid for the *taking* or *damaging* of private property. There has not here

been a taking of private property. Access and the right of ingress and egress is a property right which may not be either totally destroyed or practically destroyed without compensating the owner. In this case, in our opinion, access has not been destroyed nor has there been a substantial interference with plaintiffs' rights of ingress and egress, so as to either destroy or materially lessen the usefulness of this business property. We believe the trial court properly sustained the motion for a directed verdict.

The judgment is affirmed.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGH-MER, C., is adopted as the opinion of the Court.

HUNTER, P. J., and BROADDUS, J., concur.

CROSS, J., not participating.