**D & H PRESCRIPTION DRUG CO., INC., Appellant,**

v.

**CITY OF COLUMBIA, Missouri, Respondent.**

**No. WD 55069.**

Missouri Court of Appeals, Western District.

Oct. 20, 1998.

Thomas M. Schneider, Columbia, for appellant.

Jeffrey O. Parshall, Columbia, for respondent.

Before BRECKENRIDGE, P.J., and HANNA and HOWARD, JJ.

HANNA, Judge.

D & H Prescription Drug Co., Inc. (D & H) appeals from the judgment of the circuit court of Boone County rendered in favor of the City of Columbia on all counts of D & H's petition for damages for inverse condemnation. The case was tried to the court on June 30 and September 9, 1997. The trial court made findings of fact and conclusions of law and entered its judgment on October 16, 1997.

D & H has a commercial drug store located at the intersection of West Boulevard and West Broadway in Columbia. On October 2, 1989, the City adopted a resolution declaring the necessity for street redesign and construction at that intersection. D & H Investments, a partnership comprised of the same individuals who own D & H, leases the land and the building to D & H.

On March 18, 1991, the City adopted an ordinance declaring the need to acquire: (1) certain land for permanent street easements; and (2) a temporary construction easement from D & H Investments. D & H Investments granted the City a temporary con-

struction easement and later granted the City an easement for street purposes. D & H Investments was compensated by the City in the amount of $8000.[1]

Subsequently, the City contracted for the reconstruction of the intersection to take place from May to October 1993. The City's construction contract with the contractor specifically required:

> Access to D & H Drugstore located on the northwest corner . . . of the intersection shall be maintained at all times from either West Boulevard or West Broadway. To accomplish this the contract shall complete all work on West Broadway and open it to through traffic before removing the pavement on and commencing work on West Boulevard.

During the five months of reconstruction, D & H contends that it suffered a temporary change in customer shopping patterns, a loss of direct sales revenue, and an expenditure of additional advertising costs during the period of reconstruction. As a result, in August 1994, D & H filed a petition for damages against the City of Columbia alleging inverse condemnation and violations of 42 U.S.C. § 1983.

The trial court made a number of rulings consistent with its judgment that D & H did not state an actionable claim for inverse condemnation.[2] Although D & H challenges each decision, points one and two of its brief are dispositive. D & H argues that the trial court erred in its ruling that D & H had not stated a "recognized or actionable claim for inverse condemnation," as it could not prove

a compensable taking under the facts or existing law. D & H contends, however, that an actionable claim for inverse condemnation is stated since the facts showed a "material impairment of access," rather than a "diversion or rerouting of traffic."

 In a court-tried case, the judgment is to be affirmed unless substantial evidence does not support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Furthermore, in a court-tried case, conflicts in the evidence are for the trial court to resolve and an appellate court considers "only those facts and inferences favorable to the prevailing party." *Heigert v. Londell Manor, Inc.*, 834 S.W.2d 858, 863 (Mo.App. 1992).

 D & H claims that the Missouri Constitution has long recognized that a "material impairment" of access to property during construction of a public improvement constitutes an actionable claim for inverse condemnation. D & H contends that the proof in this matter supports a finding that there was an "impairment of access" to D & H's drug store and not a diversion of traffic. In support of its argument, D & H points to the evidence which showed that during construction, streets in three directions were closed to through traffic for the months of June, July and August. Furthermore, the traffic in the fourth direction was partially barricaded to through traffic during this time, resulting in a significant loss of sales transactions and revenue.[3] As such, D & H claims that

---

**1.** This lawsuit is for damages incurred by the lessee/appellant D & H, and not by the owner, D & H Investments, who received the $8000. D & H claims that a lessee has a compensable interest when private property is taken for public use, citing *Western Robidoux Printing & Lithographing Co., Inc. v. Missouri State Highway Comm'n*, 498 S.W.2d 745 (Mo.1973). D & H was aware, in advance, of the City's construction plans, but never sought a portion of the $8000 proceeds paid to D & H Investments.

**2.** The trial court decided that: D & H could not prove a compensable taking because others had been similarly inconvenienced; that D & H failed to prove damages, in that the income method of valuation is an improper method for determining damages in condemnations involving a partial

taking; that the lessor and lessee were required to either agree to the apportionment of the condemnation proceeds or move the court for such a determination; that D & H benefited from the intersection improvements; and that D & H never sought court relief before or during the period of improvement.

**3.** Specifically, D & H claims that the evidence proved approximately 19,000 fewer sales transactions as compared to the same time last year; that the result was $178,000 in lost gross sale revenues and $53,400 in lost net revenues; that there was a loss of $9196 in bonus value of D & H's lease and a total loss to the leasehold of $21,657; that D & H spent $9316 in additional advertising; and that it was entitled to statutory pre-judgment interest.

its drug store was "practically blockaded" by the construction and, therefore, the case law relied upon by the trial court, which addressed diversion of traffic and circuitry of travel issues, is not applicable.

D & H claims that the leading "blockage of access" case, as opposed to the rerouting of traffic, is the 1938 case of *Siemers v. St. Louis Electric Terminal R. Co.*, in which a property owner was subjected to, among other things, "[l]ong-continued deprivation by barricades or by watchman of temporary access to the building" during the construction of an underground railroad alongside the plaintiff's property. 343 Mo. 1201, 125 S.W.2d 865, 867 (1938). The court quoted from *Van de Vere v. Kansas City*, 107 Mo. 83, 17 S.W. 695 (Mo.1891), for the proposition that a plaintiff "must show that the property itself, or some right or easement connected therewith, is directly affected, and that it is specially affected." *Siemers,* 125 S.W.2d at 868.

The *Siemers'* court held that:

We think the authorities sustain the proposition that continued, though temporary, deprivation of access to the building, resulting in loss of rents or use, ... is an element of damage properly for consideration [because] the right to the use of one's property abutting on a street is an easement which cannot be taken away or impaired without just compensation.

*Id.* (citations omitted).

In *Dulany v. Missouri Pacific R.R. Co.*, the court held that summary judgment was improper, for an inverse condemnation action against the highway department who put guard rails across the landowner's access to the highway, as a genuine fact existed as to whether "reasonable access" to the highway was denied to the landowner. 766 S.W.2d 645, 648 (Mo.App.1988). Also, in *State ex rel. State Highway Comm'n v. Kemper*, 542 S.W.2d 798, 801 (Mo.App.1976), the court ruled that one who has been deprived of "reasonable means" to access to the general system of streets has suffered injury and is entitled to damages. In *Dulany* and *Kem-*

per, the actions of the highway department served to "eliminate" or "deprive" the landowners' private/direct access to the highway. 766 S.W.2d at 648, 542 S.W.2d at 802. As such, the cases were distinguished from the line of cases in which the Supreme Court had ruled that the landowners were not entitled to damages "for circuitry of access." *See Dulany,* 766 S.W.2d at 648.

The City claims that D & H has improperly characterized this case as one of barricade and impairment of access, when, in fact, the facts support a case of temporary diversion of traffic which resulted in loss of potential business and profits. The City asserts that such a claim is not a recognized cause of action for inverse condemnation in Missouri.

The evidence reveals that the owners, employees, and customers of D & H were never denied access to the store. The trial court specifically found that D & H "could not identify a single person who could not access D & H during the period of improvement" and concluded that D & H "remained open for business during the entire period of reconstruction." D & H was open for business the entire time of the construction, delivery and wholesale service was unaffected, and its staff remained employed full-time. Apart from a couple of hours on one day, there was always access to the store. The traffic whose direct destination was D & H's store, was not denied access.[4] The loss of revenue was, therefore, attributable to the loss of drive-by traffic. As such, D & H's damages were from the loss of traffic travelling by the store.

Missouri courts have long held that the right to access one's property—or the right to ingress and egress—is subject to the police power of the state in protecting the public and facilitating traffic. *See Missouri Real Estate & Ins. Agency, Inc. v. St. Louis Co.*, 959 S.W.2d 847, 849 (Mo.App.1997); *L & T Investment Corp. v. State, ex rel. Mo. Highway & Transp. Comm'n*, 927 S.W.2d 509, 510 (Mo.App.1996). This right does not include "any right in and to the existing

---

4. D & H's brief recognizes that "[a]s a result of the ... barricades and obstructions, all drive-by traffic was eliminated and only traffic whose

direct destination was [D & H's] store had access to [the] store."

public traffic on the highway, or any right to have such traffic pass by one's abutting property." *State ex rel. State Highway Comm'n v. Meier,* 388 S.W.2d 855, 857 (Mo. banc 1965).

In *Filger v. State Highway Comm'n,* the appellate court held that diminution from 163 feet to 47½ feet in the direct access of property owners to abutting road did not materially block vehicular ingress and egress and, therefore, did not entitle the owner to damages. 355 S.W.2d 425, 427 (Mo.App.1962). The property owner's petition alleged that the change in the road served to "practically completely block" access to their business property. *Id.* at 426. The court found that the evidence indicated that although the roadway changes "caused the plaintiffs' property to have less value ... the allegations of the petition that access was 'practically completely blocked' and ingress and egress was 'almost completely curtailed' were not proven nor are they apparent from the physical facts." *Id.* at 427. The court quoted from *Nichols, Eminent Domain,* 3rd Ed., Sec. 6.445, pp. 409–411:

> An individual proprietor has no right to insist that the entire volume of traffic that would naturally flow over a highway of which he owns the fee pass undiverted and unobstructed. In fact, while under some circumstances and conditions he has a right of access to and from his own premises, *he has no constitutional right to have anyone pass by his premises at all.*

355 S.W.2d at 428 (emphasis added).

*Filger* illustrates the notion that landowners must stand the loss occasioned by public improvement so long as their access rights are "not materially altered or destroyed." *Id.* at 430. Here, the trial court specifically found that the D & H drug store was always accessible to its customer's during the construction of the intersection. As in *Filger,* the alterations to the access of the property "did not result in ... a practically complete blocking of access or ... an almost complete curtailment of ingress and egress so as to make it ... physically impossible for a vehicle to travel directly from the highway to plaintiffs' property and return to the highway." 355 S.W.2d at 430. Like *Filger,* a

representative for D & H "testified in accordance therewith although asserting the changes made it more inconvenient [to access the property]." *Id.* The evidence clearly established that the access to D & H's store was not completely blocked. *See also Missouri Real Estate & Ins. Agency, Inc.,* 959 S.W.2d at 850 (ruling that the plaintiffs could not demonstrate that access to their properties was "either destroyed or substantially impaired."). We believe that the *Filger* case supports the City's argument that this is a case of diverted traffic, not denial of access, and that D & H's damages are not compensable.

The Missouri Supreme Court has reviewed the issue of diverted traffic as a "taking," in the context of the rerouting of traffic from business previously located on a state highway to a limited access throughway, and ruled that:

> The right does not include the right to travel in any particular direction from one's property or upon any particular part of the public highway right-of-way because, after one is upon the highway he has the same right as all other travelers and the right of travel is a public right and controlled by the police power of the State. Nor does the right of ingress or egress to or from one's property include any right in and to the existing public traffic on the highway, or any right to have such traffic pass by one's abutting property. The reason is that all traffic on public highways is controlled by the police power of the State, and what the police power may give an abutting property owner in the way of traffic on the highway it may take away, and by any such diversion of traffic the State and any of its agencies are not liable for any decrease of property values by reason of such diversion of traffic, because such damages are '*damnum absque injuria,*' or damage without legal injury.

*Meier,* 388 S.W.2d at 857. The *Meier* court noted that "depreciation in property values and loss occasioned by the diversion of traffic and inconvenience resulting from circuity of travel in reaching the subject property were not compensable." *Id.* at 858 (citing *Arkansas State Highway Comm'n v. Bingham,* 231 Ark. 934, 333 S.W.2d 728 (1960)).

Moreover, the *Meier* court pointed out that although the rights of an abutting owner to a public street or highway is a property right, the right is subject to well-recognized limitation. 388 S.W.2d at 859. "One of these limitations is that the right of ingress and egress does not extend to every foot of the condemnee's frontage, but under the police power of the state the right may be limited to a reasonable access under the existing facts and circumstances."

Missouri case law holds that the "complete blocking" of an abutting owner's (or lessee's) access to the system of roadways takes from him a property right, but the owner has no right to the continuation of the flow of traffic in front of his property, as ingress and egress on a particular road can be regulated under the police power of the state. *See State ex rel. State Highway Comm'n v. Brockfeld*, 388 S.W.2d 862, 863–64 (Mo. banc 1965)(finding that police power includes the changing of roadways "so long as it does not amount to a complete taking of the right of access"). *See also Kansas City v. Berkshire Lumber Co.*, 393 S.W.2d 470, 474 (Mo.1965)(ruling that appellant's claim based upon a "material decrease of direct access" was not compensable).

The trial court applied this case law to the facts and, as such, did not err in determining that D & H's claim did not constitute a recognized or actionable claim for inverse condemnation. As stated in *Brockfeld*, "[t]he real basis for complaint of an abutting owner, which makes a difference to him if he operates a commercial enterprise, is diversion of traffic," 388 S.W.2d at 865, and "it is generally well settled ... that such an owner has no right to the continuation of the flow of traffic directly in front of his property ... and [the resulting] diminution in the value of land [or leasehold interest] because of such diversion of traffic ... is noncompensable." *Id.*

Judgment affirmed.

BRECKENRIDGE, P.J., C.J., and HOWARD, J., concur.